**UNITED STATES of America**

v.

**John DOE, Defendant.**

**No. 72 Cr. Misc. 1.**

United States District Court,
S. D. New York.

March 7, 1972.

Whitney North Seymour, Jr., U. S. Atty. for Southern District of N. Y., for the United States; Gerard J. Hinckley, Special Atty., Department of Justice, of counsel.

## OPINION

FRANKEL, District Judge.

A Special Attorney for the Department of Justice has applied *ex parte* for an order pursuant to F.R.Crim.P. 6(e) "that agents of the Internal Revenue Service be granted access to books and records which have been subpoenaed or in the future are subpoenaed before the April 20, 1971 Additional Grand Jury, and to testimony of witnesses already taken or to be taken in the future before said Grand Jury, in order to determine whether there have been violations of Titles 18 and 26 of the United States Code, and *to determine civil tax liability.*" (Emphasis added.)

The affidavit supporting the application repeats the combination of civil and criminal purposes, reflected by the emphasis I have placed in both the foregoing quotation and this one:

"This request * * * is for the purpose of determining

(1) whether there have been violations of Title 18, United States Code,

(2) whether there have been criminal or *civil* violations of Title 26, United States Code, and (3) whether there are *additional civil tax liabilities* due and owing to the United States." (Emphasis added.)

The application will be denied. Without questioning the good faith or laudable motives of government counsel, the court concludes that the proposed order would sanction a misuse of the grand jury's powers.

The grand jury, which is seen increasingly to be a potent inquisitorial weapon rather than the citizen's bulwark it may once have been, is empowered to search widely and deeply. Its great powers are given, however, for inquiries which are, at least in their inception, concerned only with possible *criminal* violations. It is not, as the Government here tries to make it, a device for compelling disclosures at the sovereign's command where a purpose is *ab initio* the exploration of possible civil claims.

The analysis of precedent and principle leading to this conclusion centers upon United States v. Procter & Gamble, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). In dicta that are powerfully authoritative for us, the Court there affirmed that the Government's use of "criminal procedures to elicit evidence in a civil case * * * would [flout] the policy of the law." *Id.* at 683, 78 S.Ct. at 987. The weighty dissent of Mr. Justice Harlan (joined by Frankfurter and Burton, JJ.), while differing with the majority on subjects not vital in the present situation, contained observations closely apposite here. Mr. Justice Harlan read the majority opinion to say (and he joined in the view)

that it would be a "misuse of the grand jury process" if a "grand jury investigation [were] *instituted* solely in aid of a civil suit—that is without any thought of obtaining an indictment * * *." *Id.* at 689, 78 S.Ct. at 990.

Three published opinions of the District Court for the District of New Jersey followed the remand in *Procter & Gamble.* Without retracing those efforts, we note the resulting conclusions of Judge Hartshorne that:

(1) Where the Attorney General decided not to seek an indictment as a result of a pending grand jury investigation, but continued to use the grand jury to obtain evidence for a prospective civil case, this amounted to "a flouting of the policy of the law and a subversion or abuse of the Grand Jury process * * *." 175 F.Supp. 198, 200 (1959).

(2) If the Department of Justice started a grand jury investigation with "a completely open mind as to what the appropriate remedy should be, civil, criminal, or both," 187 F. Supp. 55, 57 (1960), "there would be no misuse of the Grand Jury." *Id.* at 58.

(3) If (as the court found substantially to have been true) the "sole intent and desire" of the prosecutors was from the outset to seek a civil remedy, with "an indictment as merely an unexpected bare possibility," *Id.* at 58, this would be (and was) a misuse of the grand jury.*

The late Judge Dawson of this Court expressed substantial agreement with the foregoing views in United States v. Carter Products, Inc., 27 F.R.D. 243 (1961). And the decision now being

---

* The remedy there was discovery of the grand jury transcript for the civil antitrust defendants. This made perfect sense, of course, where the Department of Justice actions, long past, had been in good faith, and where the proposed alternative of effectively barring the suit "would completely frustrate the intent of the Congress in enacting the Sherman Act." *Id.* at 63. As Judge Hartshorne also observed, a subsequent abuse of the same kind "might well" call forth "a different and more stringent remedy * * *." *Id.* at 64. Here, at any rate, the question of "remedy" is relatively simple. The Government is the suitor. It seeks the court's imprimatur, in the form of an order, for its proposed inquiry. If, as we conclude, the proposal entails a "misuse" or "abuse" of the grand jury, the order is obviously not to issue.

rendered is in a basically similar vein, except with respect to the possible scope of the dictum I have numbered "(2)" in summarizing Judge Hartshorne's pronouncements following the Supreme Court's decision.

It is my conclusion, applying the principles laid down by the Supreme Court in *Procter & Gamble*, that the grand jury's role is properly confined, and amply respected, when it is held empowered to conduct investigations that are *in their inception exclusively criminal*. To hold otherwise—to confer court approval upon the kind of concurrent criminal and civil inquiries projected by the instant application—would expand the already awesome powers of the grand jury beyond tolerable limits. If that thought may prove too sweeping in its generality, it seems readily defensible here. The Congress has armed the Internal Revenue Service with potent investigative tools to expose civil liabilities. See 26 U.S.C. §§ 7602–05. The statutes fashioning those devices leave room for at least some measures of protection and resistance by taxpayers and others subjected to IRS investigations. Cf. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); United States v. Pritchard, 438 F.2d 969 (5th Cir. 1971). Those measures have been evolved with focused regard for the means granted the IRS for civil investigative purposes. No similar consideration has been given to the special, secret proceedings of the grand jury.

It is true, of course, that many or most areas of law enforcement involve the alternative or cumulative prospects of both civil and criminal proceedings by the Government. But this is no justification for allowing the intentional use of a strictly criminal weapon (with a potency supposedly justified by its grave function) for the combined purposes.

It accords with fundamental principles of responsible government to require the prosecutor to determine that the grand jury inquiry is being launched for the only kind of objective with which it may lawfully proceed. It strays dangerously from those principles to allow the blurring of purposes and limits proposed here. If the prosecutors are held—and hold themselves—within proper bounds from the outset, there is in that restraint at least a degree of protection for the people. But the citizen ought not to be remitted to reliance upon official benevolence as his protection against slippery ambiguities. Whenever it is possible, as it is here, the lines should be clear.

Nothing said herein is meant to overlook the Supreme Court's realistic observation that evidence acquired in a legitimate grand jury inquiry may later be usable even though it has been concluded that no indictment should issue. See *Procter & Gamble, supra,* 356 U.S. at 684, 78 S.Ct. 983. That is wholly different from the proposition that the inquiry may start out or continue with the explicit purpose of discovering evidence for civil claims. A cynic might question, of course, whether a distinction of this sort is realistic. Could not the prosecutor *profess* the licit purpose while intending otherwise all along? But that sort of question springs from premises which, if they were or became correct, would mark the end of honest and responsible government. Such premises are, moreover, belied by the very nature of the problem before us: the Government's attorneys have submitted their proposal for judicial scrutiny, intending to proceed according to law. It is assumed that, as was done here, the representatives of the Department of Justice will not question, but will affirm in action, that the obligation of citizens to "turn square corners when they deal with the Government," Rock Island, Ark. & La. R. R. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920) (Holmes, J.), is a reciprocal one.

While the course followed by government counsel is commendable in this fundamental respect, the application will be denied for the reasons stated.

It is so ordered.