**In re JULY 1973 GRAND JURY.**
**No. 73 GJ 1785.**

United States District Court,
N. D. Illinois, E. D.

Oct. 16, 1973.

James Montana and George Gilkerson, Asst. U. S. Atty., Chicago, Ill., for Government.

Jacobson & Brandvik, Chicago, Ill., for objectors.

## MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION TO DISCLOSE GRAND JURY TESTIMONY TO THE AGENTS OF THE INTERNAL REVENUE SERVICE

ROBSON, Chief Judge.

The United States Attorney has presented a motion pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, seeking an order directing him to make available to agents of the Internal Revenue Service (IRS) subpoenaed books, records, and transcripts of testimony of the July 1973 Grand Jury proceedings No. 73 GJ 1785, relating to Rawlin Stovall and American Cash Commodities of Missouri, Inc. (American). Stovall and American object to the government's motion on two grounds: (1) the government's request is beyond the authority of the U. S. Attorney under Rule 6(e), and (2) that court approval of the government's request would constitute a severe abuse of grand jury powers. For the reasons herein stated, the government's motion shall be granted.

■ In support of its motion, the government states that the IRS has requested access to the grand jury transcripts and exhibits to determine whether civil or criminal violations of U.S.C. Title 26 exist and whether there are additional civil tax liabilities due and owing to the United States. The United States Attorney states that he is to be assisted by the IRS in determining if further criminal violations have occurred.[1]

■ Rule 6(e), Federal Rules of Criminal Procedure, provides:

"Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

Rule 6(e) was intended to implement the long established policy that maintains the secrecy of grand jury proceedings in the federal courts. See Notes of Advisory Committee on Rules. The policy of secrecy surrounding grand jury proceedings is rooted in the history of that institution and is widely known. See United States v. Rose, 215 F.2d 617, 628–629 (3rd Cir. 1954). In considering applications for disclosure of grand jury materials the court's task is to scrutinize the request against the reasons for the rule of secrecy. In re William H. Pflaumer & Sons, Inc., 53 F.R.D. 464, 471 (E.D.Pa.1971).

The government asserts on this motion that

"  .  .  . the grand jury, having already returned a criminal indictment properly wishes assistance [of the IRS] in determining if further criminal violations have occurred." Government's Memorandum in Support of Its Motion, p. 3.

Several cases have approved the practice by the United States Attorney to disclose grand jury materials to *third parties who are assisting the United States Attorney and the grand jury in performance of their duties.*[2] Particularly instructive on the issue before this court is the thorough and well-reasoned opinion of Judge Edward Becker in In re William H. Pflaumer & Sons, Inc., *supra,* (hereinafter cited as *Pflaumer).* *Pflaumer* contains in-depth analysis of the problems that arise when the United States Attorney wants to disclose material subpoenaed before the grand jury to personnel of other government agencies assisting in the investigation. In *Pflaumer* the United States Attorney was conducting an anti-racketeering grand jury investigation. The grand jury later expanded the scope of its inquiry to

---

1. Stovall and American have been indicted for mail fraud and perjury in 73 CR 679. This, of course, does not bar the grand jury from exploring other areas of potential criminal liability for which the objectors may be accountable. The criminal investigation process does not stop where a defendant is charged with committing a crime.

2. *See* United States v. Culver, 224 F.Supp. 419 (D.Md.1963) (disclosure to postal inspectors); United States v. Anzelmo, 319 F.Supp. 1106, 1116 (E.D.La.1970) (disclosure to attorney and accountant of SEC); United States v. Hoffa, 349 F.2d 20, 43 (6th Cir. 1965) (disclosure to Special Consultant to Attorney General and the agents of the F.B.I. who were working on the case); United States v. Zirpolo, 288 F.Supp. 993 (D.N.J.1968), rev'd on other grounds, 450 F.2d 424 (3rd Cir. 1971) (Disclosure to agents of F.B.I.). But see, In re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir. 1956); In re Holovachka, 317 F.2d 834 (7th Cir. 1963); Application of the State of California, 195 F.Supp. 37 (E.D.Pa.1961); In re Grand Jury Proceedings, 29 F.R.D. 151 (E.D.Pa.1961), aff'd 309 F.2d 440 (3rd Cir. 1962).

cover tax law violations. The IRS discontinued its own tax investigation and consolidated its efforts with those of the grand jury. In opposing Pflaumer's motion for a protective order, the government relied on Rule 6(e), just as the United States Attorney has in this case. In denying the motion the court, emphasizing that the grand jury investigation was being conducted in good faith and the position occupied by the IRS in the hierarchy of government, stated:

> "Moreover, on the record as it is now before us, it appears: (1) that with respect to the criminal tax investigation, the entire investigation will be conducted under the aegis of the United States Attorney's Office; and (2) that with respect to any possible civil tax investigation, there is no present prospect that the records will be removed from the aegis of the United States Attorney. Accordingly, subject to your determination on the good faith issue (see infra), we deny the motion for a protective order and thereby refuse to bar the IRS agents access to the records so long as they remain under the aegis of the attorneys for the government, i. e., the United States Attorney for the Eastern District of Pennsylvania and his Assistants, . . . ."

In opposing the government's motion, Stovall and American place heavy reliance upon In re April 1956 Term Grand Jury, 239 F.2d 263 (7th Cir. 1956) (hereinafter cited as: "Shotwell") and United States v. John Doe, 341 F.Supp. 1350 (S.D.N.Y.1972). The court is of the opinion that these cases are inapposite. *Shotwell* and *John Doe* involved attempts by the government to abuse the grand jury, i. e., to use it for non-legitimate purposes. In *Shotwell*, the Sev-

enth Circuit noted that the grand jury subpoenas were being used as a subterfuge by the Treasury Department to obtain books and records that could not otherwise be obtained in a civil investigation. Thus, absent a showing of bad faith by the government, *Shotwell* is not controlling on this motion. In fact, *Shotwell* recognizes that third persons may use grand jury materials when they are *assisting* the grand jury in its work. The court stated at 239 F.2d 272:

> While we hold that the district court cannot properly interfere with the action of the grand jury in turning over to third persons, including treasury agents, voluminous records and accounts for the sole purpose of examination and report to the grand jury, as an assistance to it, we also hold that persons, nonmembers of the grand jury, thus having access to said . . . documents, have no right to use them for any purpose whatsoever *except to assist the grand jury in its work.* [Emphasis added].

In the present case, the United States Attorney is seeking the assistance of the IRS to determine if there were additional violations of the federal criminal law. In this circumstance, no abuse of grand jury processes is apparent to the court.

In United States v. John Doe, *supra,* the court found that the purpose of the grand jury investigation was "ab initio the exploration of possible civil claims." 341 F.Supp. at 1351. In *John Doe,* no criminal indictment had been returned and the real danger was that the grand jury was being used to obtain evidence in a *civil* case, a prospect which quite properly made Judge Frankel react with shock and fear. [3]

This case, however, does not have elements of abuse of grand jury processes

---

3. Judge Frankel stated: "It is my conclusion, applying the principles laid down by the Supreme Court in *Proctor & Gamble,* [356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077] that the grand jury's role is properly confined, and amply respected, when it is held empowered to conduct investigations that are *in their inception exclusively criminal.* To hold otherwise—to confer court approval upon the kind of concurrent criminal and civil inquiries projected by the instant application—would expand the already awesome powers of the grand jury beyond tolerable limits." United States v. John Doe, 341 F. Supp. 1350 (S.D.N.Y.1972). To the contrary, this case was at its inception exclusively criminal, as evidenced by the return of indictments against the objectors.

that compelled the decisions in *Shotwell* and *John-Doe.* Here, the fact that the grand jury has already returned multiple-count indictments against Stovall and American indicates that there has been no perversion of grand jury processes.

■■ Stovall and American also rely on *In re Holovachka*, 317 F.2d 834 (7th Cir. 1963)[4] and Application of the State of California, 195 F.Supp. 37 (E.D.Pa. 1961)[5] to support its argument that the veil of secrecy that surrounds grand jury proceedings should not be lifted except in the most compelling circumstances. This court recognizes that rule, but it is of the opinion that this case falls within an exception which permits the United States Attorney to disclose materials to third parties, here the agents of the IRS, who are to assist the grand jury in the performance of their duties.

The final issue that remains to be resolved is whether the grand jury materials to which the IRS is seeking access could be used in aid of a civil action against the objectors for taxes due and owing to the United States.

■ It is clear that material properly obtained by the grand jury can be used in a subsequent civil proceeding by the office of the United States Attorney or another branch of the Justice Department (e. g. Antitrust Division). In United States v. Proctor & Gamble, *supra*, a federal grand jury investigated possible criminal violations of the Sherman Act. No indictment was returned but the government brought a subsequent civil suit. The government used a grand jury transcript to prepare the civil case, and the defendants sought discovery of the transcript. The request for discovery was denied because no showing was made that the criminal procedure had been subverted. The Court stated that "[t]he fact that a criminal case failed does not mean that the evidence obtained could not be used in a civil case." 356 U.S. at 684.

In United States v. General Electric Co., 209 F.Supp. 197 (E.D.Pa.1962) the government instituted civil antitrust actions following a grand jury investigation. The court held that the testimony developed and the documents produced in the grand jury investigation were available to the Antitrust Division attorneys for use in the preparation and trial of its civil damage suits. In reaching its decision the court considered *Shotwell* and noted that ". . . the Court's ruling really condemned the perversion of grand jury proceedings to procure for use in a civil case evidence which had been otherwise unobtainable." 209 F.Supp. at 201.[6]

It is clear that the United States Attorney can properly use grand jury material that has legitimately been obtained in a good-faith criminal investigation, in a subsequent civil action. In this case the grand jury material should also be available to the IRS, which is to assist the United States Attorney in determining if further criminal or civil actions are warranted. For the reasons stated by Judge Becker in *Pflaumer*[7]

---

4. In *Holovachka* the court held, relying heavily on *Shotwell*, that grand jury records obtained by a subpoena in a tax fraud investigation against Mr. Holovachka, a member of the bar of Indiana, were privileged from disclosure to the Attorney General of Indiana who sought to use them in disciplinary proceedings.

5. In *Application of California*, several governmental entities sought to inspect and copy grand jury subpoenas arising out of grand jury investigations into antitrust violations in the electrical equipment industry. The court relied heavily on *Shotwell* and denied California access to or use of grand jury materials. 195 F.Supp. at 41.

6. However, the material was not made available to attorneys for the T.V.A. because they did not fall within the purview of the first sentence of Rule 6(e), i. e., they were not attorneys for the government as defined by Rule 54(c). 209 F.Supp. at 202. *See also*, In re Grand Jury Proceedings, 29 F.R.D. 151 (E.D.Pa.1961); aff'd 309 F.2d 440 (3rd Cir. 1962) where the court held that attorneys for the Federal Trade Commission could not have access to grand jury records based, in part, on the reasoning of *Shotwell*.

7. In *Pflaumer*, Judge Becker noted that Rule 6(e), through Rule 54(c), expressly encompassed all assistant United States Attorneys, such as the prosecutor involved here. It

this court is of the opinion that the agents for the IRS shall be permitted to have access to testimony and exhibits presented to the July 1973 Grand Jury, No. 73 GJ 1785, provided that the IRS's investigation remains under the aegis of the United States Attorney, and his assistants in the Northern District of Illinois.

It is therefore ordered that the government's motion to disclose subpoenaed records and transcripts of the July 1973 Grand Jury No. 73 GJ 1785, to agents of the Internal Revenue Service is hereby, and shall be, granted.

was also noted that attorneys from an independent government agency, like the F.T.C., or attorneys from a quasi-governmental corporation, like the T.V.A., are not within the scope of Rule 6(e). But then Judge Becker noted the peculiar role occupied by the IRS vis-a-vis the United States Department of Justice: "The *interrelationship between the IRS and the Department of Justice illustrates how this works in practice. The Department of Justice depends upon the IRS entirely for the investigation of tax crimes, and all tax prosecutions are undertaken only upon the recommendation of the IRS.*" 53 F.R.D. 464 at 475. [Emphasis added].