**In re Grand Jury Subpoena of Martin R. STOLAR.**

**Misc. No. 11–118.**

United States District Court, S. D. New York.

May 22, 1975.

As Amended July 8, 1975.

Paul J. Curran, U. S. Atty., S.D.N.Y., by Lawrence B. Pedowitz, Asst. U. S. Atty., New York City, for United States.

James Reif, Brooklyn, N. Y., Martin R. Stolar, Stolar, Alterman & Gulielmetti, New York City, for Stolar and Shepherd.

Association of Legal Aid Attorneys, Center for Constitutional Rights, National Conference of Black Lawyers, National Emergency Civil Liberties Committee, National Lawyers Guild, New York Civil Liberties Union, and Puerto Rican Legal Defense and Education Fund, Inc., amici curiae in Support of Motion to Quash.

## MEMORANDUM OPINION

PIERCE, District Judge.

This is an application to quash a grand jury subpoena directed to Martin R. Stolar, an attorney · Execution of the subpoena has been stayed pending the Court's disposition of the motion.

By and large, the facts are not in dispute. On December 20, 1974 a magistrate's warrant was issued for the arrest of one Colette Ali on a charge of unlawful flight to avoid prosecution in violation of 18 U.S.C. § 1073. One William Sheperd was believed to have information concerning Ali's whereabouts. Accordingly, the Federal Bureau of Investigation (FBI) began making efforts to question Sheperd. On April 11, 1975, Sheperd, having learned that the FBI was seeking to interview him, telephoned Martin Stolar, an attorney, and requested legal advice. An appointment was made by the attorney for Sheperd to meet with him on the afternoon of April 14, 1975. Having learned of the attorney's involvement, on the morning of April 14th an FBI agent called Stolar, and indicated that he wanted to question his client, Sheperd. He did not disclose the questions he wanted to ask Sheperd, but he did reveal that he was investigating the whereabouts of Colette Ali. During their discussion on the afternoon of April 14, 1975 Sheperd and Stolar decided that Sheperd could and would decline to speak to the FBI. On April 16, 1975 the agent again called Stolar who informed him of that decision. The agent then asked for Sheperd's address and the attorney refused to provide him with that information. Stolar's uncontroverted affidavit in support of the application alleges that at that point the agent stated that he would have him subpoenaed in order to get the information. The following day, April 17, 1975, the agent called the attorney again seeking the same information. An offer made by the attorney to arrange a meeting between the agent and Sheperd was refused as insufficient. On April 24, 1975 Stolar was served by the agent with a subpoena requiring his appearance before a grand jury on the following morning. The information sought from Stolar is Sheperd's telephone number and his home and employment addresses.

■ Stolar has moved[1] to quash the the grand jury subpoena on the grounds, inter alia,[2] that it constitutes an abuse of the grand jury process and that in any event the information sought is protected by the attorney-client privilege. The government contests both assertions.

*Abuse of Grand Jury Process*

With regard to the charge of abuse of the grand jury process the movant contends that the primary purpose of the subpoena here is to aid the Federal Bureau of Investigation in its efforts to apprehend Colette Ali. The movant argues that this is beyond the lawful functions of a federal grand jury. At the oral argument of this motion the government appears to have conceded that it sought to question Sheperd in order to obtain information helpful to the FBI in its attempt to apprehend a fugitive.

■ ■ There is no question but that a grand jury has the right and the duty to search out, examine and weigh whatever evidence there may be in connection with a suspected crime. In order to fulfill its primary function of returning indictments against individuals believed to have committed serious crimes the powers of the grand jury must necessarily be exceedingly broad. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). It may properly investigate on the basis of tips, rumors, hearsay, speculation or any other source of information. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). It has been noted that a grand jury's task "is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." *United States v. Stone,* 429 F.2d 138, 140 (2d Cir. 1970). Nevertheless, it must be remembered that the grand jury is endowed with these expansive powers so that it may "inquire into the existence of possible criminal conduct and . . . return only well-founded indictments." *Branzburg, supra,* 408 U.S. at 688, 92 S.Ct. at 2660. Indeed, there are matters into which a grand jury may not inquire simply because they fall outside the area of its proper functions. Clearly, for example, a grand jury may not be empanelled nor its process used solely to inquire into a strictly civil matter. See *United States v. Doe,* 341 F.Supp. 1350 (S.D.N.Y.1972) (Frankel, J.). And even when the grand jury is generally acting within its normal limits care must be taken to ensure that its historic functions are not subverted nor its powers abused. For instance, the Second Circuit Court of Appeals has recently reaffirmed the principle that a grand jury may not be used "for the sole purpose of preparing an already pending indictment for trial." *United States v. Del Toro,* 513 F.2d 656, 664 (2d Cir. 1975). It has also been recognized that the grand jury process may not be used by a federal prosecutor solely to conduct his own investigation. *Durbin v. United States,* 94 U.S.App.D.C. 415, 221 F.2d 520, 522 (1954). With these general principles there can be little dispute, but, as always, it is their application which gives rise to litigation.

■ In this case an attorney has been subpoenaed in order that he might be questioned regarding the whereabouts of his client so that, in turn, the client could then be interrogated as to the where-

---

1. Pursuant to Rule 24(a)(1) of the Fed.R. Civ.P. Sheperd has moved to intervene. That application is denied. There has been no indication whatsoever that his interest will not be adequately represented by an existing party, to wit, Stolar. In fact, every indication is to the contrary. Exactly the same issues that Sheperd wishes to raise have been raised by Stolar. Indeed, two of the arguments raised by Stolar—the Sixth and Fifth Amendments claims—are asserted to vindicate Sheperd's alleged rights. Moreover, Stolar's attorney is also the same attorney representing Sheperd in his motion to intervene.

2. In light of this Court's determination granting the motion to quash on two of the grounds presented, the Court need not reach the merits of the other issues raised.

abouts of a person suspected of having violated federal law. The government apparently was not satisfied with the proposal made by the attorney that he would make his client available for questioning by the FBI. Instead, the government chose to compel the attorney's appearance before the grand jury to obtain the information it sought. Under these circumstances, the Court believes that this constitutes an abuse of the grand jury process.

■ A grand jury, of course, may inquire into "the whereabouts of unlocated witnesses." *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). However, here the sought-after witness, Sheperd, cannot, in fact, be said to be "unlocated." The attorney has offered to make him available and the government has not even attempted to explain why this arrangement is not satisfactory. There is a basis to conclude, as movant asserts, that Sheperd's telephone number and addresses are needed not for purposes of the grand jury investigation as such but merely so that this data can be turned over to the FBI for whatever purposes that agency chooses to use it. It has been claimed—without contradiction—that the FBI agent in this case informed the attorney that he needed the information in question "as background information" for his "investigative file." It would appear then, that the grand jury subpoena is being used not in aid of its proper functions but rather as an adjunct or tool of an FBI investigation. In this Court's view, such a procedure is impermissible. Congress has not chosen to vest the FBI with subpoena powers and it would circumvent that legislative judgment for the FBI to be allowed to instead simply make use of the grand jury process in order to do indirectly what it may not do directly. Just as the grand jury is not meant to be "the private tool of [the] prosecutor", *United States v. Fisher,* 455 F.2d 1101, 1105 (2d Cir. 1972), it should not be allowed to become an arm of the FBI.

*Attorney-Client Privilege*

Further, Stolar claims that the information sought is protected by the attorney-client privilege.

■ It is settled that the attorney-client privilege may be raised in response to a grand jury subpoena. However, it is not as clear whether a client's address and telephone number fall within the ambit of the privilege. It is settled that an attorney must disclose the identity of the client. In *Colton v. United States,* 306 F.2d 633, 637 (2d Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), the Court noted that "the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client." The basis for this view would seem to be that the client's identity is not a matter which is learned by an attorney as a result of a confidential communication emanating from the attorney-client relationship. Another justification might be that a "court has a right to know that [a] client whose secret is treasured is actual flesh and blood, and demand his identification, for the purpose, at least, of testing the statement [that he exists] which has been made by the attorney who places before him the shield" of the attorney-client privilege. *United States v. Lee,* 107 F. 702, 704 (C.C.E.D.1901). It has also been held that an attorney must disclose the details of a retainer agreement on the ground that such matters are not confidential. *In re Michaelson,* 511 F.2d 882 (9th Cir. 1975). See *United States v. Pape,* 144 F.2d 778, 782 (2d Cir.), *cert. denied,* 323 U.S. 752, 65 S.Ct. 86, 89 L. Ed. 602 (1944). To be sure this is not to say that this kind of information is per se without the privilege, see *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960), yet, "in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the condition of employment and the amount of the fee do not

come within the privilege of the attorney-client relationship." *In re Semel,* 411 F.2d 195, 197 (3rd Cir. 1969). It might be thought, with some reason, that the rationales underlying these decisions would generally serve to compel disclosure of a client's address and telephone number. This information could be viewed as simply a further detail relating to the client's identification received at the threshold of the attorney-client relationship and therefore not yet within the embrace of confidentiality. Here, however, there is no issue presented regarding the identity of a client. The fact of retention of counsel by a particular individual is not sought to be established. See *People ex rel. Vogelstein v. Warden,* 150 Misc. 714, 270 N.Y. S. 362 (Sup.Ct.1934), *aff'd mem.* 242 App.Div. 611, 271 N.Y.S. 1059 (1st Dep't 1934). It is undisputed that Stolar has been retained by William Sheperd to obtain legal advice with respect to the proposed FBI questioning. Nor is this a case where the information is being withheld to frustrate a judgment of the Court. See *Falkenhainer v. Falkenhainer,* 198 Misc. 29, 97 N.Y.S. 2d 467 (Sup.Ct.1950). Rather, the information is apparently needed as a link to assist the FBI in its current investigation. Under the peculiar circumstancs of this case, this Court holds that the information sought falls within the scope of the attorney-client privilege.

The general purpose of this privilege is "to promote freedom of consultation of legal advisers by clients." 8 Wigmore, Evidence, § 2291 (McNaughton rev. 1961). To this end the client must be assured that information conveyed in confidence to the attorney will not be ordinarily disclosed. Arrayed against this consideration is the public interest in obtaining disclosure of every man's evidence. See *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). When these two principles clash a balance must be struck and an appropriate resolution will not be forthcoming by a wooden application of some general formula. The answer may lie, instead, in an analysis of the particular circumstances giving rise to the problem, ever mindful of the policy considerations which furnish a basis for the two principles.

Sheperd was aware that he was being sought for questioning by the FBI—although apparently not in connection with any claimed crime on his part. He was not disposed to reveal his whereabouts to that agency. When Sheperd telephoned Stolar he made known his misgivings and sought counsel with respect to his legal rights. Stolar agreed to provide such legal advice. During the course of that conversation Sheperd gave the attorney his telephone number. As part of the attorney-client discussions which thereafter took place Sheperd also disclosed his home address and the name of the place where he was employed. The Court is of the opinion that the information sought was communicated to the attorney confidentially and solely for the purpose of receiving legal advice. Under the circumstances Sheperd had a legitimate basis to expect that such information disclosed to his attorney was made in confidence and would not be revealed. Legal advice that an individual may decline to be interviewed by the FBI will hardly be meaningful if the attorney at the behest of the FBI may then be compelled to disclose the very information which the client has legally sought to conceal. If it be urged that including such information under the umbrella of the attorney-client privilege may unduly hamper a lawful investigation, the answer is that other methods of obtaining the information sought must be found short of converting an attorney into an unwilling informant. If the information sought is needed in order interview Sheperd, such a result could have been effortlessly reached in this case by agreeing to the proposal made by the attorney to make his client available for questioning by the FBI. Under the circumstances of this case it seems to this Court that there was no need for a knee-jerk reaction of subpoenaing an

attorney in order to seek information which perhaps could otherwise have been easily obtained. At a minimum the conceded existence of the attorney-client relationship would seem to require that some caution be exercised particularly upon the undisputed facts presented here.

The motion to quash is granted.

So ordered.[3]

3. Subsequent to the filing of this Court's Memorandum Opinion herein dated May 22, 1975, the government in a letter dated May 27, 1975, supported by an affidavit from the FBI agent involved, argued that the Court had in part premised its opinion on a number of erroneous factual conclusions. At the Court's instance, the government submitted its contentions in affidavit form. Briefly, the government has argued that the offer to arrange a meeting between the FBI agent and Sheperd was acepted by the agent but was later withdrawn by Stolar. However, material submitted in opposition to the government's position appears to indicate that while the agent did not explicitly reject the offer he at no time accepted it. Further, there seems to be no clear-cut evidence to support the government's proposition that the agent was later informed by Stolar that the offer of a meeting was no longer outstanding. Nevertheless, it should be pointed out that it appears that at the time the subpoena issued the Assistant United States Attorney handling the case had no knowledge that the offer had been made. It also seems that, after the subpoena was issued and prior to oral argument on the application to quash, the Assistant learned about the offer but was under the impression that it had been withdrawn. In any event, as the Court sees it, the additional material submitted will not serve to change the Court's prior rulings since the Court still is of the view that under the circumstances presented here the issuance of the subpoena constituted an abuse of the grand jury process and a violation of the attorney-client privilege.