Fuchsberg, J.
(dissenting). In my view, this is an instance in which what the court conceives to be a hard case is leading it into making bad law. That is especially regrettable because, doing so, its determination necessarily impinges on the very valuable, and what should be unassailable, attorney-client privilege on which in large measure the effectiveness of the right to counsel, and, in turn, a panoply of other deeply rooted political and social rights so heavily depend (People v Garofolo, 46 NY2d 592, 599).
The policy on which rests the guarantee of confidentiality of communication between lawyer and client is very demanding in the protections it affords the client. That its enforcement at times may frustrate the administration of justice will not suffice alone to allow for its breach; indeed, its very purpose may be to keep secure the imparting of information which the State would, if known to it, use to its advantage (People v Belge, 83 Misc 2d 186, affd 50 AD2d 1088, affd 41 NY2d 60).
In serving the rights of the parties to particular proceedings. the privilege also supports the proper functioning of our adversary system as a whole. To that end, a lawyer is en *227 joined, by mandate of law and of ethics, to hold inviolate the confidences of his client not merely to facilitate the full disclosure of information that may aid in a representation already undertaken, but, by removing any need for a client’s concern that his revelations will be turned against him, to encourage the client to seek legal assistance in the first place (Ethical Consideration, Code of Professional Responsibility, EC 4-1, Judiciary Law, Appendix). Without either condoning resort to self-help or deprecating the importance of securing obedience to court decrees, these overriding concerns forbid sacrificing the privilege to the expediency of the case at hand.
True, as with most rules, there are exceptions. Matters a client does not intend to be confidential, of course, by very definition, are not protected. And, where the confidence is received by the attorney in order to advance a criminal or fraudulent purpose, as when he aids and advises in the perpetration of an unlawful act, it is dehors the privilege (People ex rel. Vogelstein v Warden, 150 Misc 714, affd 242 App Div 611; Flower v Tierney, 32 AD2d 392; Uniform Rules of Evidence, rule 26, subd [2], par [a]). But, since unjustified intrusions into communications with lawyers are to be avoided, there must be proof positive of an unlawful purpose before the confidence can be so invaded (see Clark v United States, 289 US 1, 15; Conveney v Tannahill, 1 Hill 33).
In the present case, it is undisputed that the client’s address was imparted in the course of the professional relationship; indeed, the client expressly enjoined her counsel to secrecy. Also unchallenged is that its sole, proper and even desirable purpose was to keep the lawyer posted as to where he could reach his client. Under these conditions, courts have held the address of a client to be privileged information (Hyman v Corgil Realty Co., 164 App Div 140; Matter of Trainor, 146 App Div 117; Brooklyn Sav. Bank v Park Slope Realty Corp., 146 Misc 4; Matter of Stolar, 397 F Supp 520). Far from giving even the slightest hint that the attorney either assisted in planning the aunt’s departure to a new location or, for that matter, had any advance notice of it at all, the Surrogate went out of his way to commend counsel, who served in the case at the behest of a publicly funded legal services agency, for reflecting credit on himself and the legal profession in the way in which he carried out his professional responsibilities. Further, the record affirmatively shows that the attorney first learned that his client had vacated her Bronx apartment *228 when the biological parents became aware of it and that, until then, he believed she had merely taken the child on a vacation.
Obviously, the ability of an attorney and a client to communicate with one another is an essential adjunct to the exercise of the right to counsel. Without a means by which a client may solicit and receive advice, and an attorney transmit it, the right may be an empty one. It follows that arrangements between the two, if proper in other respects, are not subject to invasion merely because that might, as here, make easier the execution of a judgment of a court, or, by way of further example, even the apprehension of a fugitive from justice,
Not only policy, but practical considerations interdict such an exclusion from the embrace of the privilege. For a different rule would be counterproductive. Bad enough that it would thwart rather than encourage resort to counsel, once it becomes known that the address of a client is not protected by the privilege, it may be expected that, thereafter, when a client wishes an address withheld, it rarely would be found within the ken of the lawyer. The result of such a narrowing of the privilege, therefore, would in all likelihood not be to open up a source of information but to close down the channel of communication by which, for instance, a lawyer may now be able to negotiate the surrender of a client to the authorities.
Cases requiring lawyers to disclose the names of their clients are not analogous. Such decisions in the main are premised on either the principle that every litigant is entitled to know his opponent or the fact that the information is essential to the preliminary determination of the very existence of an attorney-client relationship (see, e.g., 8 Wigmore, Evidence [McNaughton rev, 1961], § 2313; Harriman v Jones, 58 NH 328). Clearly, these arguments have no force here; neither the client’s identity nor the existence of the relationship has ever been in doubt.
Nor does CPLR 3118 permit a breach of the privilege. That section, in existence in its present form only some 15 years, is, purely and simply, a discovery device. In establishing a procedure for obtaining an opposing party’s address, it provides for the making of a demand which, though it would customarily be addressed to the lawyer as the litigation agent for his client, is substantively one made on the client precisely as is a demand for a bill of particulars, a notice to take a deposition, *229 a notice to admit, or the like. The sanction for failure to comply in all these cases is not to force the disclosure of the facts from the attorney but, instead, the usual penalties affecting the client’s position in the litigation itself, such as preclusion or dismissal or stay of proceedings (see, e.g., 99 Plaintiffs v Vanderbilt, 1 Abb Prac 193 [plaintiffs’ action stayed pending compliance with order to produce addresses]; CPLR 3126; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3118.02). So it is not uncommon for some litigants to drop a suit or a defense rather than provide deposition testimony or pleading particulars unexpectedly ordered to be furnished; indeed, the Government itself does so from time to time under similar circumstances to maintain the confidentiality of evidence it would rather not reveal. That does not mean that the attorney for the private party in the one case, or the attorney for the Government in the other, is free, absent waiver by each one’s client, to disclose the information which the client was ready to suffer prejudice to protect.
Nothing in the wording of the statute, in standard New York practice treatises or in the placement of the statute amongst the discovery sections of the Civil Practice Rules casts even the slightest doubt on these observations (see Siegel, New York Practice, § 365; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3118.02; McKinney’s Cons Laws of NY, CPLR, Book 7B, 3118). Language seemingly to the contrary in some of the cases is often found on analysis not to have been the result of a probing of the range of the privilege and is therefore not authoritative (see, e.g., Corbett v De Comeau, 13 Jones & Sp 637; Post v Scheider, 13 NYS 396).
All of which leads me to believe that there was no reason to place the appellant attorney in the draconian dilemma of either violating his trust or being held in contempt. Above all, his client and all clients must know that in seeking the protection of their rights under law, they may freely confide in members of the Bar. Accordingly, I would reverse the order of the Appellate Division and dismiss the petition.
Chief Judge Cooke and Judges Gabrielli and Wachtler concur with Judge Jasen; Judge Jones concurs in a separate opinion; Judge Fuchsberg dissents and votes to reverse in another opinion.
Order affirmed.