**In re GRAND JURY PROCEEDINGS.**

**Miscellaneous No. 80–56 P.**

United States District Court,
D. Maine.

Jan. 19, 1981.

Duane D. Fitzgerald, Fitzgerald, Donovan, Conley & Day, Bath, Maine, Robert H.

Koehler, and Richard J. Parrino, Patton, Boggs & Blow, Washington, D. C., for plaintiff.

Jane A. Restani, Alexander Younger, Virginia I. Bradley, Dennis C. Egan, U. S. Dept. of Justice, Civ. Div., Washington, D. C., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT DENYING APPLICATION OF BATH IRON WORKS CORPORATION FOR PROTECTIVE ORDER AND OTHER RELIEF

GIGNOUX, Chief Judge.

On October 22, 1980, Bath Iron Works Corporation (BIW) filed with the Court an application for a protective order preventing attorneys of the Civil Division of the United States Department of Justice ("Civil Division") from using documents produced by BIW pursuant to a grand jury subpoena *duces tecum* served upon its Vice President and General Counsel on July 31, 1980 in connection with a grand jury investigation of BIW, as well as investigatory reports referring to and incorporating such documents, until the grand jury investigation has been completed and this Court has issued an order authorizing such use.[1] BIW contends that the disclosure of these documents and investigative reports by attorneys of the Criminal Division of the Department of Justice ("Criminal Division") to the Civil Division before the grand jury has terminated its criminal investigation violates the principle of grand jury secrecy codified in Rule 6(e) of the Federal Rules of Criminal Procedure, 18 U.S.C. The United States opposes the application, asserting that no violation of Rule 6(e) has occurred. The record before the Court consists of the affidavits, with annexed exhibits, of L.

1. BIW also seeks an order requiring Civil Division attorneys to withdraw all written communications from the Civil Division to the Department of the Navy resulting from use of improperly disclosed grand jury materials by the Civil Division; an order preventing Justice Department attorneys from disclosing any further grand jury materials for civil purposes while the grand jury investigation is pending; and an order requiring attorneys for the Civil Division to appear before this Court for the purpose of disclosing to the Court *in camera* the use made by the Civil Division of the documents produced by BIW pursuant to the grand jury subpoena, and to show cause why such use was not in violation of Rule 6(e) of the Federal Rules of Criminal Procedure.

James Gardner, Vice President and General Counsel of BIW; Alexander Younger, Esq., Assistant Director of the Commercial Litigation Branch of the Civil Division; and Ihor Kotlarchuk, Esq., Trial Attorney in the Fraud Section of the Criminal Division. The issues have been fully briefed and argued.

## I

## THE FACTS

The material factual background may be briefly summarized. In March 1978, the Department of the Navy ("Navy") brought to the attention of the Civil and Criminal Divisions allegations that BIW had submitted fraudulent claims to an Arbitration Panel selected to hear disputes arising under certain contracts entered into by BIW with Marine Ship Leasing Corporation (MSLC) for the construction of five 25,000 DWT tankers for the use of the Military Sealift Command (MSC). The Navy, under a "Build and Charter Program," had chartered the tankers and, by contractual agreement with MSLC, was ultimately responsible for the payment of any claims awarded to BIW.

In January 1979, the Criminal Division and the United States Attorney for the District of Maine began a criminal investigation into the matter. When BIW first became aware of the investigation in May 1979, it informed the United States Attorney of its willingness to cooperate in the investigation and to produce whatever documentation was requested. On June 15, the United States Attorney by letter to BIW's outside counsel, Duane D. Fitzgerald, Esq., acknowledged BIW's offer of cooperation and outlined nine specific areas of interest from which books and records were to be provided to investigators. On July 12, investigators began receiving from BIW, on a voluntary basis, materials requested in the June 15 letter, and on July 26, BIW furnished investigators an inventory of all materials that were available for inspection at its Hardings Facility, where BIW main-tained most of its records in connection with the disputed contracts. Review of the requested documents had not, however, been completed by July 31.

On July 31, 1979, a grand jury subpoena *duces tecum* was served on BIW's Vice President and General Counsel, L. James Gardner. The subpoena required Mr. Gardner to produce before the grand jury in Portland on August 16 books and records covering the nine specific areas of interest listed in the June 15 letter of the United States Attorney. On the next day, August 1, the United States Attorney notified BIW that it was unnecessary for Mr. Gardner to appear before the grand jury since the documents sought by the subpoena had already been produced and were being examined by the investigative agents. Until the present time BIW has continued to turn over documents to the agents and the agents have continued to conduct interviews with BIW officials.

On January 10, 1980, the Arbitration Panel issued its decision, awarding $5,607,-673, plus interest, to BIW. Pursuant to the terms of the contracts between BIW, MSLC and the Navy, BIW looked to the Navy for ultimate payment of the arbitral award. Since a government agency cannot pay fraudulent claims, in July, 1980 the Navy requested the views of the Civil Division as to the propriety of paying the amount of the award in light of the allegations of fraud. Civil Division attorneys reviewed the proceedings before the Arbitration Panel, the documents submitted by BIW to the government investigators, and the FBI investigatory reports, which included references to documents produced by BIW and a summary of FBI interviews in which these documents were shown to persons during the course of the interviews. The BIW documents and FBI reports had been disclosed to the Civil Division attorneys by the Criminal Division, but the Civil Division attorneys did not receive or review any transcript of the grand jury proceedings.[2]

2. As of October 1980, no transcript of the grand jury proceedings had been prepared.

The BIW documents and FBI reports have not been disclosed to the Navy.[3]

On October 1, 1980, the Civil Division informed the Navy that, based on its review of the evidence, there was a basis for the Navy to deny payment of BIW's claim upon the ground that the arbitral award was fraudulently procured. As a result, the Navy informed BIW that the arbitral award would not be paid. When BIW's counsel subsequently learned that the Civil Division had based its fraud determination on an analysis of the BIW documents and FBI investigatory reports obtained from the Criminal Division, BIW filed the present application for a protective order. The Criminal Division is still conducting its investigation with the aid of the grand jury, which has not yet returned any indictment.

## II

## THE LAW

The Court agrees with the Government that the disclosure of the BIW documents and the FBI investigatory reports by the Criminal Division to the Civil Division does not violate Rule 6(e) for two reasons: first, because the documents and investigatory reports do not constitute "matters occurring before the grand jury" within Rule 6(e)(2); second, because, in any event, the disclosure of grand jury materials to Civil Division attorneys is expressly authorized by Rule 6(e)(3)(A)(i).

■ *Rule 6(e)(2).* Rule 6(e)(2) prohibits disclosure of "matters occurring before the grand jury."[4] Documents subpoenaed by and submitted to a grand jury, as well as

the testimony of witnesses before a grand jury, may come within the Rule's prohibition of disclosure. *In re Grand Jury Proceedings*, 309 F.2d 440, 443 (3rd Cir. 1962); *United States v. Stein*, 18 F.R.D. 17, 19 (S.D.N.Y.1955), *rev'd on other grounds sub nom. United States v. Jackson*, 257 F.2d 830 (2d Cir. 1958). The Rule does not require, however, that "a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 at 1382 (D.C.Cir.1980) (en banc). "The aim of the rule is to prevent disclosure of the way in which information was presented to the grand jury, the specific questions and inquiries of the grand jury, the deliberations and vote of the grand jury, the targets upon which the grand jury's suspicion focuses, and specific details of what took place before the grand jury." *In re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299, 1302–03 (M.D.Fla.1977). It is well established that

it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury.

---

3. The Younger affidavit recites that, as the attorney supervising the Civil Division inquiry, he knows of no disclosures to Navy personnel, or to anyone else outside the Department of Justice, "regarding the details of the evidence pertaining to this matter," and furthermore that the "Civil Division has discussed the background of this matter with the Department of the Navy only in generalized terms." His affidavit further sets forth that no transcript of the grand jury proceedings is in the possession of the Civil Division and that no Civil Division attorney has ever seen such a transcript.

4. Rule 6(e)(2) reads as follows:

(2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

*United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960). *See also In re September 1971 Grand Jury (Mara)*, 454 F.2d 580, 583 (7th Cir. 1971), *rev'd on other grounds*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *In re Search Warrant for Second Floor Bedroom*, 489 F.Supp. 207, 211 (D.R.I.1980); *Capitol Indemnity Corp. v. First Minnesota Construction Co.*, 405 F.Supp. 929, 930–31 (D.Mass.1975).

█ In the present case, the review of the BIW documents and FBI investigative reports by the Civil Division has in no way impinged upon the secrecy of the grand jury's deliberations. The Civil Division's civil fraud investigation, which was undertaken at the request of the Navy, was separate and distinct from the criminal fraud investigation being conducted by the Criminal Division and the grand jury inquiry. The purpose of the Civil Division was not to determine what transpired before the grand jury, but rather to examine the records for their own sake in furtherance of its own authorized investigation. The BIW documents and FBI reports at issue do not reveal what has occurred before the grand jury. No disclosure of "matters occurring before the grand jury" has therefore occurred and Rule 6(e)(2) does not prohibit the disclosures here challenged.[5]

█ *Rule 6(e)(3)(A)(i)*. Even if the BIW documents and FBI investigatory reports constitute "matters occurring before the grand jury" within Rule 6(e)(2), no violation

of Rule 6(e) has occurred because Rule 6(e)(3)(A)(i) expressly permits disclosure of matters occurring before the grand jury (other than its deliberations and the vote of any grand juror) to "an attorney for the government for use in the performance of such attorney's duty."[6] Fed.R.Crim.P. 54(c) defines "attorney for the government" to include "the Attorney General, an authorized assistant of the Attorney General ...," and Civil Division attorneys are

> "attorneys for the government" as defined in Federal Rule of Criminal Procedure 54(c) because they are "authorized assistants of the Attorney General." *See* 28 U.S.C. §§ 510, 516 (1976) and 28 C.F.R. § 0.45(d) (1977).

*In re Grand Jury*, Misc. No. 979, 583 F.2d 128, 130 (5th Cir. 1978). It is thus well established that Rule 6(e) does not prohibit disclosure of grand jury materials to Civil Division attorneys for their use in civil matters within the scope of their duties. *In re Grand Jury*, Misc. No. 979, *supra; State of Washington v. American Pipe & Construction Co.*, 41 F.R.D. 59, 62 (S.D.Cal.1966); *United States v. General Electric*, 209 F.Supp. 197, 202 (E.D.Pa.1962).[7]

BIW contends that the Civil Division's access to grand jury materials while the grand jury proceedings are pending presents a "strong danger" that the grand jury improperly could be used as a vehicle for civil discovery. BIW points out that in

---

5. In this respect, *Capitol Indemnity Corp. v. First Minnesota Construction Co.*, *supra* at 932–34, a case upon which BIW principally relies, is distinguishable. In *Capitol Indemnity*, the United States Attorney was seeking to utilize both the documents presented to the grand jury and the transcripts of the grand jury proceedings in aid of his preparation for a civil case.

6. Rule 6(e)(3)(A) provides in relevant part:
   (3) Exceptions.
   (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
   (i) an attorney for the government for use in the performance of such attorney's duty; and
   (ii) such government personnel as are deemed necessary by an attorney for the

government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

7. As noted above, the record before this Court establishes that the Civil Division attorneys have not disclosed the evidence adduced in the criminal investigation of BIW to the Navy, or to any other person outside of the Department of Justice. Thus, the cases cited by BIW which hold that Rule 6(e)(3)(A)(i) does not permit disclosure to counsel for administrative agencies are inapposite. *See Capitol Indemnity Corp. v. First Minnesota Construction Co.*, *supra* at 932–34; *In re Grand Jury Investigation*, 414 F.Supp. 74 (S.D.N.Y.1976); *United States v. Doe*, 341 F.Supp. 1350 (S.D.N.Y.1972); *In re Grand Jury Proceedings, supra*, 309 F.2d at 443. .

United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the Supreme Court declared that if the government used "criminal procedures to elicit evidence in a civil case . . . it would be flouting the policy of the law." *Id.* at 683, 78 S.Ct. at 987. *See also United States v. Doe,* 341 F.Supp. 1350, 1352 (S.D.N.Y.1972); *Capitol Indemnity Corp. v. First Minnesota Construction Co., supra* at 932–33. In the present case, however, there is no evidence of improper use of the grand jury as a vehicle for civil discovery, and, indeed, BIW counsel has stated that BIW is not aware of any abuse of the grand jury process.[8] The Civil Division investigation did not commence until at least a year after commencement of the criminal investigation. BIW voluntarily agreed to submit the documentation requested by the Criminal Division prior to the issuance of the grand jury subpoena. Civil Division attorneys have neither reviewed, nor sought to review, transcripts of the grand jury proceedings. The documents reviewed by the Civil Division have not been revealed to the Navy. In short, BIW has made no showing that the grand jury is being utilized for civil purposes.

## ORDER

The Application of Bath Iron Works Corporation for a Protective Order and Other Relief, filed October 22, 1980, is in all respects DENIED.

IT IS SO ORDERED.

---

[8] The Younger affidavit recites that on October 20, 1980, he held two telephone conversations with Robert H. Koehler, Esq., one of BIW's counsel, relating to the possibility that BIW would file a motion pursuant to Rule 6(e). Mr. Koehler stated that BIW was not alleging that the Civil Division was using or directing the grand jury investigation for civil purposes. Mr. Koehler added that BIW "had no reason to believe" that there was grand jury abuse. The Kotlarchuk affidavit further recites that at no time has the Civil Division given any leads or guidelines concerning the investigation or grand jury proceedings and that at no time have documents or witnesses been sought for civil purposes.