IN RE ADVISORY OPINION NO. 544 OF THE NEW JERSEY
SUPREME COURT ADVISORY COMMITTEE ON
PROFESSIONAL ETHICS.

Argued March 18, 1986—Decided July 17, 1986.

400

*Cecelia Urban* argued the cause for appellant Community Health Law Project (*Harold B. Garwin,* Executive Director, attorney).

*Carol L. Widemon,* Deputy Attorney General, argued the cause for respondent New Jersey Supreme Court Advisory Committee on Professional Ethics (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Susan R. Oxford,* Deputy Attorney General, on the brief).

*Melville D. Miller, Jr.,* President, argued the cause for *amicus curiae,* Legal Services of New Jersey (*Melville D. Miller, Jr.,* attorney, *Melville D. Miller, Jr.,* and *Joseph Harris David,* Senior Attorney, on the brief).

*Richard E. Shapiro,* Director, Division of Public Interest Advocacy, argued the cause for *amicus curiae,* New Jersey Department of Public Advocate (*Alfred A. Slocum,* Public Advocate, attorney).

The opinion of the Court was delivered by

HANDLER, J.

We are called to consider in this case the application of attorney-client protections to the relationship between a public legal services organization and the individuals whom it assists. The issue posed is whether certain information relating to the clients of a legal services organization, which provides legal

assistance to mentally impaired or disabled and indigent persons, may be disclosed to the private and governmental entities that provide funds to the organization, without violating the protections of confidentiality accorded attorney-client communications and relationships.

The legal services organization resisting such disclosure is the Community Health Law Project (hereinafter the Law Project). It is a non-profit organization providing legal services to indigent, mentally disabled and retarded persons in Essex, Mercer, Union, and Camden counties. Its legal services are funded by private and public sources. Various contracts with the funding entities obligate the Law Project to make periodic reports relating to the services provided, including in some instances information about the individual clients served.[1]

Under the funding plans of several community mental health centers, identifying, descriptive information, such as a client's name, address, and date of birth, have been sought by the entities providing funds. The Law Project has chosen not to reveal the identity of individual clients by furnishing such information. Rather, it has attempted to accommodate these requests by providing data that have been aggregated and by disclosing information on individual clients only to the extent and in a manner that the revelation would not serve to identify the clients directly or indirectly. However, several funding entities expressed their dissatisfaction with the generalized nature of the information received from the Law Project and have insisted upon obtaining individual client-identifying information.

---

[1] A cited example is the condition imposed by the Division of Mental Health and Hospitals, State Department of Human Services, that requires the Law Project to submit a unified service transcript form report on each client served under the funding program. By means of a client identifying number, and a social security number, the Division of Mental Health and Hospitals is able to monitor the funds expended to assist this client.

In the face of these more particularized demands, the Law Project has taken the position that such identifying information is or may be protected from disclosure under the strictures governing the professional conduct of lawyers.[2] However, confronted by this genuine ethical dilemma, the Law Project sought guidance from the Advisory Committee on Professional Ethics (ACPE) in January 1984 to ensure that disclosure would not violate any ethical precepts.

In *Opinion No. 544*, 114 *N.J.L.J.* 477 (1984), the ACPE ruled that the disclosure of the information requested by private and public funding entities does not violate the confidences of the Law Project's clients and that the information requested would not violate client secrets or confidences within the meaning of then-applicable ethics standards, Disciplinary Rule 4–101(A), or Disciplinary Rule 4–101(C)(1). The Law Project then filed a petition with this Court to review the determination of the ACPE, which was originally denied. 101 *N.J.* 335 (1985). A motion for reconsideration of the denial was then granted by this Court. 102 *N.J.* 352 (1985).

We must initially consider the applicability of the attorney-client privilege to the relationships that exist between the Law Project and its clientele. The Law Project, as we have noted, is an organization that provides legal services to a particular class of persons, consisting of indigent, mentally-retarded, or disabled individuals. These persons are in need of legal assistance

---

[2]The controversy has been sharpened by the recent expanded use of computers by the funding sources, which greatly facilitates the handling of information and apparently inspires an official need and appetite for greater and more particularized information. Thus, we are informed that the Department of Human Services announced plans to create a department-wide computer. This computerization program would require the Division of Mental Health and Hospitals and the Division of Developmental Disabilities to share client information with other departmental agencies *via* the computer. Similarly, the County Mental Health Center of the Oranges, Maplewood and Millburn reports information on clients assisted through its funds to the Division of Mental Health and Hospitals and has established its own computer system, creating more possibilities of data sharing.

but cannot otherwise afford to retain an attorney and hence turn to the Law Project for legal help. The Law Project engages licensed attorneys of the State, who furnish legal advice and counselling to the individuals eligible for such services.

■■ As licensed attorneys, the Law Project's lawyers are subject in every respect to the rules governing the professional conduct of lawyers. *See In re Education Law Center, Inc.*, 86 *N.J.* 124, 138 (1981) (in course of representation by public law firm, lawyers are subject to all disciplinary rules and to discipline of the Supreme Court). Accordingly, lawyers employed by governmental or public interest organizations are bound by the same ethical mandates of the Supreme Court's Rules of Professional Conduct, as well as other standards governing the professional activities of licensed attorneys.

■ Further, the persons who receive the legal services of the Law Project through its individual staff attorney are "clients." A client, in the context of the attorney-client privilege, is a person who "consults a lawyer ... for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." *N.J.S.A.* 2A:84A–20(3); *Evid.R.* 26(3). Consequently, it is not questioned that there exists between the Law Project and its attorneys who render legal services and the persons who receive those services an attorney-client relationship to which the attorney-client privilege fully applies.

■ It is also beyond question that indigent, needy, or otherwise eligible clients, assisted by attorneys without fees, are entitled to the same protections as clients who retain private counsel. *See In re Education Law Center, Inc., supra,* 86 *N.J.* at 133, 136, *ABA Comm. on Prof. Ethics Informal Opinion 324* (1970); *ABA Comm. on Prof. Ethics 1443* (1979); *Ariz. Comm. on R.P.C. Op. 81–4* (1981). Because the status of clients in every sense is ascribed to these persons, we must accordingly consider in this case the extent of these client-pro-

tections, particularly as to matters falling within the ambit of the attorney-client privilege.

The major focus of the attorney-client privilege has historically and traditionally been upon the communications that occur or information that is exchanged between an attorney and his or her client relating to the special attorney-client relationship. The attorney-client privilege is recognized as one of "the oldest of the privileges for confidential communications." 8 J. Wigmore, Evidence § 2290, at 542 (McNaughton rev. 1961); see Hazard, "An Historical Perspective on the Attorney-Client Privilege," 66 Calif.L.Rev. 1061, 1071 (1978); Note, "The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement," 91 Harv.L.Rev. 464, 465 (1977). While the attorney-client privilege has evolved and changed in terms of its emphasis and applications, the primary justification and dominant rationale for the privilege has come to be the encouragement of free and full disclosure of information from the client to the attorney. This has led to the recognition that the privilege belongs to the client, rather than the attorney. Callen & David, "Professional Responsibility and the Duty of Confidentiality: Disclosure of Client Misconduct in an Adversary System," 29 Rutgers L.Rev. 332, 337 (1976); Annot., 16 A.L.R. 3d 1047, 1050 (1967). Hence the key element of this privilege has been a protective cloak of confidentiality applied to such exchanges. See C. McCormick, Evidence § 87, at 175–76 (2 ed. 1972); J. Wigmore, Evidence, supra, § 2290, at 543; Note, "The Attorney-Client Privilege in Class Actions: Fashioning an Exception to Promote Adequacy of Representation," 97 Harv.L. Rev. 947, 948 (1984).

The extent of the protection accorded communications and other information arising in the course of any attorney-client relationship is governed by the attorney-client privilege as well as several ethics standards. The attorney-client privilege itself, while rooted in the common law, has acquired a basis in both statute and rule. See N.J.S.A. 2A:84A–20;

*Evid.R.* 26. This codification provides that communications between a lawyer and his or her client in the course of that relationship and in professional confidence are privileged; a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his or her lawyer from disclosing it. *N.J.S.A.* 2A:84A–20. While in a sense the privilege belongs to the client, the lawyer is obligated to claim the privilege unless otherwise instructed by the client or the client's representative. *Ibid.*

The scope of the attorney-client privilege or protections is also subject to ethics rules governing attorney conduct. In this case, the ACPE determined the issue posed by the Law Project under the former Disciplinary Rules. It applied Disciplinary Rule 4–101(A), entitled "Preservation of Confidences and Secrets of a Client." Under this rule, confidences are defined as information protected by the attorney-client privilege under applicable law. *Ibid.* The rule also deals with "secrets," which are defined as other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or detrimental to the client. *Ibid.*

The Disciplinary Rules have been superseded by the Rules of Professional Conduct. The relevant rule now provides that a lawyer shall not reveal information relating to representation of a client unless the client consents after consultation except for disclosures that are impliedly authorized in order to carry out the representation. *RPC* 1.6(a). In comparison to the provisions of the former Disciplinary Rule, this Rule expands the scope of protected information to include all information relating to the representation, regardless of the source or whether the client has requested it be kept confidential or whether disclosure of the information would be embarrassing or detrimental to the client. See ABA, Model Rules of Professional Conduct, Rule 1.6, Comments. Thus, the definition of confidential information under Rules of Professional Conduct

1.6(a) is broader and more inclusive than that of Disciplinary Rule 4–101(A).

The ethics rules generally forbid disclosure of client information, without the client's consent, unless one of the exceptions to the rule is available. Disclosure of client information is permissible if the client consents after consultation. *RPC* 1.6(a). In this case no one urges the possible applicability of this provision dealing with consent. In situations such as this where the clients receiving legal services are indigent as well as mentally impaired or disabled, they may not be able to appreciate the nature or importance of their own interests or their ability to resist or decline consent or disclosure. *See ABA Informal Opinion 1287* (1974) (informed consent to disclose client secrets requires that the attorney establish that the client fully understands the scope of the impact of consent, that consent is totally voluntary, and that client can deny consent without any sense of guilt or embarrassment).

The appropriate analysis must therefore focus upon whether the revelation of client information to someone other than the lawyer amounts to the impermissible disclosure of a privileged communication or a secret or information relating to the relationship. That inquiry is here particularized in terms of whether certain information that identifies the disabled and indigent persons receiving legal services from a legal services project may be disclosed to funding sources without violating the attorney-client privilege as defined by both statute and the Court's ethics strictures governing professional conduct.

Arguably "information gained in the course of an attorney-client relationship," as provided under the former Disciplinary Rule 4–101(A), might not include information that consists of only the identity of the client. The thrust of this definitional standard appears to be directed to information in the nature of communications. While a client's identity *per se* might not be necessarily considered a privileged communication as such, *see In re Kozlov*, 79 *N.J.* 232, 246 (1979) (concurring opinion), in

some instances disclosure of identity may indirectly reveal other information about the client. Hence, depending upon the nature of such additional or collateral information that is revealed by the disclosure of a client's identity, the need for confidentiality could appropriately cloak even identity. In this case, for example, disclosure of the identity of clients of the Law Project would be tantamount to the revelation of the mental and financial status of the individuals, as well as the fact that he or she has a legal problem that required the services of an attorney.

Furthermore, under the former Disciplinary Rules, it would appear that matters such as the identification or address of a client could still be considered to be a "secret" entitled to non-disclosure. In *Fellerman v. Bradley*, 99 *N.J.* 493 (1985), an attorney refused to disclose the address of his client, thereby thwarting the enforcement of a divorce judgment against the client. The Court concluded that this information could be considered a confidence or in the nature of a protected secret covered by the attorney-client privilege and the Disciplinary Rule, *id.* at 501, holding nonetheless that, in the circumstances, the fraud exception to the privilege applied to preclude non-disclosure of the client's address.

The dilemma posed by requests for client-identity information has been addressed by the American Bar Association Committee on Professional Ethics and various state advisory committees. In an opinion issued in 1969, the Committee ruled that a legal services office could allow the accounting office to examine its intake and disposition forms provided all identifying data were deleted. *ABA Comm. on Prof. Ethics Informal Opinion 1081* (1969). Similarly, in 1974, the Committee determined that a legal services organization could reveal client information to its Board of Directors if anonymity was preserved, the information was reasonably required by the board for a legitimate purpose, and the client expressed an informed consent. *ABA Comm. on Prof. Ethics Opinion 334* (1974); *see also ABA Comm. on Prof. Ethics Informal Opinion 1394* (1977) (Disci-

plinary Rule 4–101 prohibits a legal services program from allowing a state social services department to audit files containing client secrets or confidences unless the client gave his informal consent); *ABA Informal Opinion 1287* (1974) (name, address, and phone numbers of legal services clients are "secrets" within the meaning of Disciplinary Rule 4–101).

The Board of Professional Responsibility of the Supreme Court of Tennessee reached a similar result. It determined that a client's name, address, zip code, sex, race, age, social security number, phone number, source of referral, and the dates representation began were all secrets within the meaning of Disciplinary Rule 4–101 and could not be disclosed to funding sources unless the client consented. Op. 82–5–25 (1982). *See also Mississippi State Bar Ethics Comm. Opinion No. 101* (1985) (information that would tend to identify the client in a given case, whether it be name, particulars of the case, objective sought, or other is a secret within the meaning of DR 4–101(A)).

We are persuaded by the soundness of these opinions. Also highly relevant to our analysis is the fact that client information that serves to identify the client would clearly be protected under the current Rules of Professional Conduct, *RPC* 1.6. As noted, this rule accords confidentiality to any information relating to the representation of a client. Manifestly this would include a client's identity.

■ Accordingly, we hold that under current standards governing attorney conduct, client-identity may not be disclosed to any private or public funding agency in the absence of appropriate consent or other legal justification. In so ruling, we determine that a client's identity constitutes information relating to the representation of a client under the current Rules of Professional Conduct and a secret entitled to non-disclosure, if not a protected confidential communication, under the attorney-client privilege and former Disciplinary Rule 4–101(A), which was relied upon by the ACPE in this case.

It is further suggested that even though this information might otherwise be subject to a privilege against disclosure, there may be a legal justification that would allow such disclosure. Disclosure of such information is permissible because, it is contended, the information sought is required to be furnished by law. The Division of Mental Health and Hospitals has promulgated regulations requiring reporting for all agencies receiving financial assistance through the Division, to aid in monitoring compliance and for program planning and development. *N.J.A.C.* 10:37–6.83. Also, under *N.J.A.C.* 10:37–6.84 information such as client services and fiscal reports are to be submitted to the Division. Further, the Divisions of Mental Health and Hospitals and Developmental Disabilities and the various county mental health agencies are required to maintain the confidentiality of any client information it receives from the Law Project. *See N.J.S.A.* 30:4–24.3; *N.J.A.C.* 10:37–6.79. It is contended that the reporting of information is needed to comply with these regulations and that this would not constitute either impermissible disclosure or public disclosure of client information violative of applicable ethics restrictions.

■ Under the Rules of Professional Conduct a lawyer may reveal such information to the extent the lawyer reasonably believes necessary to comply with the law. *RPC* 1.6(c)(3). However, the regulations promulgated by the Division that provide for reporting as related to the persons assisted by the Law Project do not specifically require client-identifying information. Moreover, there is no legal requirement that client-identifying information be disclosed to private funding agencies. In the absence of such requirements, we may not infer that this client-identifying information is necessary to be disclosed as a matter of law. Hence, it may remain privileged under the Rules of Professional Conduct, *RPC* 1.6(c)(3).

This result, we point out, would not be different under the former ethics rules. In *Fellerman v. Bradley, supra,* 99 *N.J.* 493, the compliance-with-law exception of Disciplinary Rule

4–101(C)(3), was deemed to prohibit disclosure of attorney-client information except in a situation in which the client was attempting through non-disclosure to evade an order of a court. We expressed the view that the policies underlying the privilege would not be advanced by allowing the client through his attorney to perpetrate a fraud on the court or to thwart justice by consenting to and subsequently ignoring a judgment of the court by refusing to disclose the client's address. *Id.* at 508; *see In re Kozlov, supra,* 79 *N.J.* 232; *see also In re Stroger,* 100 *N.J.* 545 (1985) (disclosure of confidential ethics material may be permitted when such materials are required to be kept by law).

We acknowledge that if by statute or valid rule or regulation information concerning the identity of clients of a legal services organization were clearly required to be reported for legitimate governmental purposes, the analysis and result could well be different. A different conclusion as to the propriety of disclosure might also obtain in the event private funding sources sought client information under enforceable rules or regulations. It can reasonably be assumed that in such a context, the welfare and interests of clients would remain a paramount concern and that the disclosure occasioned by such necessary reporting would be attended by suitable protections reflecting needs for confidentiality and privacy.

## II.

We conclude that client-identifying data with respect to persons receiving legal assistance through the Law Project constitute matters clearly covered by the Rules of Professional Conduct as "information relating to representation." Such material is also covered under the attorney-client privilege and the former Disciplinary Rule as information in the nature of client secrets that could be embarrassing or detrimental to the client if revealed. Under these strictures we are satisfied that it would be improper to reveal such information to either public

or private funding sources in the absence of valid consent or reasonable rules clearly requiring such disclosure for legitimate purposes.

Accordingly, we reverse *Opinion No. 544.*

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.