**In the Matter of the Arbitration Between INTEGRITY INSURANCE COMPANY, IN LIQUIDATION, Claimant,**

v.

**AMERICAN CENTENNIAL INSURANCE COMPANY, Respondent.**

No. 95 Civ. 1010 (SAS).

United States District Court, S.D. New York.

April 7, 1995.

Thomas J. Lennon, Hackensack, NJ, for petitioners Thomas Lennon, and Eugene McGee.

Brendan M. Kennedy, Werner & Kennedy, New York City, for claimant Integrity Ins. Co. In Liquidation.

Eugene Wollan, Ronald J. Theleen, Mound, Cotton & Wollan, New York City, for respondent American Centennial Ins. Co.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Thomas Lennon and Eugene McGee petition this Court to quash subpoenas duces tecum issued by an arbitrator pursuant to a dispute between Integrity Insurance Company, in liquidation ("Integrity"), and American Centennial Insurance Company ("ACIC"). The subpoenas were issued by the arbitrator at the request of ACIC, and direct the petitioners to appear for pre-hearing depositions and to produce documents.

1. The agreements are:
   1. Quota Share Reinsurance Agreement RIA 1080, effective 7/1/81—12/31/84 ("Agreement 1080");
   2. Quota Share Reinsurance Agreement (4013, 5091, 6127), effective 7/1/78—6/30/81 ("Agreement 4013");
   3. Third and fourth layer casualty excess of loss reinsurance agreement RIA 1021, effec-

## BACKGROUND

The dispute between Integrity and ACIC arises from a number of reinsurance agreements.[1] *See* Affidavit of Brendan M. Kennedy ("Kennedy Aff."), Attorney for Integrity, at ¶ 2. The Liquidator instituted arbitration proceedings against ACIC pursuant to those agreements. *Id.* Separate and apart from the arbitration proceeding, the Liquidator has filed an action in New Jersey on behalf of Integrity's policyholders, creditors, reinsurers and others, against former officers and directors of Integrity, including petitioner McGee ("D & O action").[2] *See* Affidavit of Eugene Wollan, Attorney for ACIC, in Support of Petition ("Wollan Aff.") at ¶ 8. McGee is a *former* Vice President of Integrity and Lennon is McGee's attorney in the D & O action. Petition ("Pet.") at ¶¶ 3–4. Lennon also represents Leonard Stern, a former President of Integrity and a defendant in the D & O action. Wollan Aff. at ¶ 8. Discovery in the D & O action has been stayed pending the outcome of settlement negotiations. Pet. at ¶ 7.

Neither petitioner is a party to the arbitration proceeding. The subpoenas require them to appear for a deposition and to produce all relevant documents relating to the reinsurance agreements at issue between ACIC and Integrity. The subpoenas further require production of documents relating to the D & O action. Wollan Aff. at ¶ 8. Additionally, ACIC seeks to depose Lennon in order to learn the whereabouts of Stern, so that Stern can be served with a deposition subpoena. Lennon has refused to voluntarily disclose Stern's address, claiming that it is privileged. Wollan Aff. at ¶ 9; Brief in Support of Petition at 9.

Petitioners request that this Court quash these subpoenas, on the grounds that an arbitrator has no authority to compel a non-party to appear at a deposition prior to an arbitration hearing. Petitioners also question the materiality of the information sought.

tive 1/1/84—12/31/84 ("Agreement 1021"); and
   4. Quota Share Casualty Reinsurance Agreement RIA 978, effective 1/1/80—12/31/82 ("Agreement 978").

2. *Merin v. Yegen Holdings Corp.*, No. C–16131–88 (N.J.Super.Ct. Ch. Div. Bergen County, filed 1988).

## DISCUSSION

### A. *Depositions of Nonparties*

█ The issue of whether an arbitrator has the authority to compel a nonparty to appear at a pre-hearing deposition appears to be a case of first impression within this district.[3] This Court recognizes that federal policy strongly favors arbitration as an alternative dispute resolution process, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and that courts should interpret the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, so "as to further, rather than impede, arbitration." *Bigge Crane and Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 246 (E.D.N.Y.1973).

Arbitration is, however, a creation of contract, bargained for and voluntarily agreed to by the parties. The petitioners, who are not parties to the arbitration agreement, never bargained for or voluntarily agreed to participate in an arbitration. After weighing the policy favoring arbitration against the rights and privileges of nonparties, this Court concludes that an arbitrator does not have the authority to compel nonparty witnesses to appear for pre-arbitration depositions.

█ To determine the extent of an arbitrator's authority, one must begin with the source of that authority. An arbitrator's power *over the parties* derives from both the arbitration agreement and the FAA. Arbitrators can exert no more control over parties than that which the parties, through their agreements, granted to the arbitrators. The four reinsurance agreements contain different arbitration clauses. Agreements 1080 and 4013 state "[t]he arbitrators ... are relieved of all judicial formalities and may

abstain from following the strict rules of law." Agreements 1021 and 978 state: "[t]he arbitrators will not be obliged to follow judicial formalities or the rules of evidence except to the extent required by the state law of the site of arbitration.... Except as provided above, arbitration will be based upon the procedures of the American Arbitration Association [ ("AAA") ]." The rules of the AAA state that "[a]n arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party." American Arbitration Association, *Commercial Arbitration Rules*, Rule 31 (1993). Thus, there is nothing within the reinsurance agreements that explicitly limits the power of an arbitrator to order discovery. *See Chiarella v. Viscount Indus. Co. Ltd.*, No. 92 Civ. 9310, 1993 WL 497967 (S.D.N.Y. Dec. 1, 1993).

█ Because the parties to a contract cannot bind nonparties, they certainly cannot grant such authority to an arbitrator. Thus, an arbitrator's power *over nonparties* derives solely from the FAA. The contested subpoenas were issued by the arbitrator pursuant to section 7 of the FAA.

The arbitrators ... may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case.... [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said

---

**3.** The arbitrators are sitting in New York, which grants arbitrators authority to issue subpoenas. *See* N.Y.Civ.Prac. L. & R. ("CPLR") §§ 2302(a), 7505 (McKinney 1991). Professor Siegel notes that this authority extends only to the hearing before the arbitrators, "and not, by implication, for the steps preparatory to the hearing," *i.e.* discovery. David D. Siegel, Practice Commentaries, CPLR 2302:1. However, in an action brought in federal court, "[t]he FAA applies when there is federal subject matter jurisdiction, i.e. diversity jurisdiction and when the contract calling for arbitration 'evidenc[es] a transaction involving interstate commerce.' 9 U.S.C. § 2."

*Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir.1991) (citations omitted); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967). The instant case is here on diversity. Additionally, the underlying reinsurance agreement involved interstate commerce as it extended to "losses arising out of Policies issues or renewed during the term of this Agreement in the United States of America, its territories and possessions, and Canada as covered by the original Policies." Agreement 4013 at p. 2. The FAA would therefore prevail over any inconsistent state arbitration statute. *See Prima Paint Corp.*, 388 U.S. at 401, 87 S.Ct. at 1805.

person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7.

■ Implicit within the power to compel compliance with an arbitrator's summons must be the power to quash that summons if it was improperly issued. *Oceanic Transport Corp. v. Alcoa S.S. Co.*, 129 F.Supp. 160 (S.D.N.Y.1954) (rejecting petition to sanction nonparty for failure to comply and vacating subpoena because evidence sought was not material). The court may also consider a petition to quash; there is no requirement that a petition to compel be made first. *See Commercial Metals Co. v. International Union Marine Corp.*, 318 F.Supp. 1334 (S.D.N.Y.1970) (denying motion to quash subpoena duces tecum issued by arbitrator because evidence sought by arbitrator—documents from a party—was relevant to inquiry).

Though the language of the statute speaks only to the arbitrators power to summon a witness to "attend before them," *i.e.* at the hearing, the courts have permitted arbitrators to order prehearing discovery of *parties*. *See, e.g., In re Technostroyexport*, 853 F.Supp. 695, 697 (S.D.N.Y.1994) (pre-hearing discovery *between parties* is "a matter governed by the applicable arbitration rules (as distinct from court rules) and by what the arbitrator decides."); *Chiarella v. Viscount Indus. Co. Ltd.*, No. 92 Civ. 9310, 1993 WL 497967 (S.D.N.Y. Dec. 1, 1993) (arbitrators did not exceed authority by ordering *the parties* "to mutually exchange all documents and witness lists (*i.e.* full discovery)"). Two cases from other districts address discovery from nonparties and appear to be the most closely analogous to the instant case.

In *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F.Supp. 1241 (S.D.Fla.1988) the arbitrator, at the request of the defendants, had issued subpoenas to nonparties, requiring prehearing production of documents. The plaintiff objected, contending that issuance of the subpoenas was improper, and constituted impermissible pre-hearing discovery. The court held that:

[the] plaintiffs ... are asking the court to impose judicial control over the arbitration proceedings. Such action by the court would vitiate the purposes of the Federal Arbitration Act: 'to facilitate and expedite the resolution of disputes, ease court congestion, and provide disputants with a less costly alternative to litigation.' *Recognition Equip., Inc. v. NCR Corp.*, 532 F.Supp. 271, 275 (N.D.Tex.1981).

Furthermore, the court finds that under the Arbitration Act, the arbitrators may order and conduct such discovery as they find necessary. *See Corcoran v. Shearson/American Express, Inc.*, 596 F.Supp. 1113, 1117 (N.D.Ga.1984); *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558 (S.D.Miss.1976).... Plaintiff's contention that § 7 of the Arbitration Act only permits the arbitrators to compel witnesses at the hearing, and prohibits pre-hearing appearances, is unfounded.

*Stanton*, 685 F.Supp. at 1242–43. *Stanton* differs from the instant case in two significant ways. First, the objections to the subpoenas in *Stanton* were made by one of the parties to the arbitration, not by the subpoenaed nonparty. Second, the subpoenas in *Stanton* were for the production of documents, and did not require pre-hearing depositions.

When contracting parties stipulate that disputes will be arbitrated, they agree to submit to arbitration procedures rather than court procedures.

[F]ull scale discovery is not automatically available in arbitration, as it is in litigation. Everyone knows that is so; thus the unavailability of the full panoply of discovery devices, with their attendant burdens of time and expense, may fairly be regarded as one of the bargained-for benefits (or burdens, depending on one's subsequent point of view) of arbitration.

*Commonwealth Ins. Co. v. Beneficial Corp.*, No. 87–Civ.–5056, 1987 WL 17951 (S.D.N.Y. Sept. 29, 1987); *accord Oriental Commercial & Shipping Co., Ltd. v. Rosseel, N.V.*, 125 F.R.D. 398, 400 (S.D.N.Y.1989). Thus, if an arbitrator either refuses to permit, or limits, discovery, courts will seldom order additional discovery in aid of arbitration when requested by a party. This is motivated both by avoidance of wasteful "dual discovery," *see Corcoran v. Shearson/American Express*, 596 F.Supp. 1113, 1117 (N.D.Ga.1984), and to give effect to the arbitration process that the parties bargained for. *See Commonwealth, supra.*

At issue here, however, is an objection by *nonparties*. Petitioners are not parties to the reinsurance agreements nor did they agree to arbitration; there is no "bargained for" advantage to the nonparty. Thus, references to cases concerning pre-hearing discovery disputes *between parties* are not persuasive.

The only reported case that explicitly addresses the plight of a nonparty who objects to arbitrator-ordered discovery is *Meadows Indem. Co., Ltd. v. Nutmeg Ins. Co.*, 157 F.R.D. 42 (M.D.Tenn.1994).[4] There, an arbitration panel ordered a nonparty to produce documents, for inspection by a party, prior to the arbitration hearing. Upon the nonparty's motion for a protective order, the court ruled that the arbitrators' subpoena was valid under the FAA.

> The power of the panel to compel production of documents from third-parties for the purposes of a hearing implicitly authorizes the lesser power to compel such documents for arbitration purposes prior to a hearing. [Movant's] argument requires adoption of an unnecessarily constrictive and unreasonable reading of Section 7 which would limit the ability of the arbitration panel to deal effectively with a large and complex case such as the one at hand, and generally hamper the use of arbitration as a forum for dispute resolution.

*Id.* at 45. The court further noted that because the documents requested would ultimately have to be produced at the hearing, if not prior to it, no added burden was placed on the nonparty. *Id.*

It is the burden placed on the nonparty that distinguishes *Meadows* from the instant case. Documents are only produced once, whether it is at the arbitration or prior to it. Common sense encourages the production of documents prior to the hearing so that the parties can familiarize themselves with the content of the documents. Depositions, however, are quite different. The nonparty may be required to appear twice—once for deposition and again at the hearing. That a

nonparty might suffer this burden in a litigation is irrelevant; arbitration is not litigation, and the nonparty never consented to be a part of it. Furthermore, as the deposition is not held before the arbitrator, there is nothing to protect the nonparty from harassing or abusive discovery. The nonparty would, of necessity, turn to the court, obligating the court to become enmeshed in the merits of the matter being arbitrated. This would leave "the parties with one foot in court and the other in arbitration." *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 564 (S.D.Miss.1976). Though the *Mississippi Power* court was addressing "dual discovery"—discovery proceeding simultaneously under the direction of the court and the arbitrators—the considerations of "minimizing the time, expense, and formality of arbitration; preventing duplicative efforts by the federal courts and the arbitrators; and avoiding interference with the arbitrators," *Thompson v. Zavin*, 607 F.Supp. 780, 782–83 (N.D.Cal.1984), is equally applicable here.

Thus, an arbitrator may not compel attendance of a nonparty at a pre-hearing deposition. The subpoenas issued by the arbitrators are modified accordingly.

### B. *An Attorney's Disclosure of a Client's Address*

■ Petitioners also contend that Lennon's knowledge of his client Leonard Stern's address is privileged. Because this issue will doubtless resurface at the arbitration hearing, this Court addresses it now so as to avoid needless reargument.

■ There is no absolute bar against disclosure of a client's address. *In re Nackson*, 221 N.J.Super. 187, 196, 534 A.2d 65, 70 (1987). The determination depends on an analysis of the facts of the case and the nature of the communication between attorney and client. *In re Grand Jury Subpoenas Served Upon Field*, 408 F.Supp. 1169, 1173 (S.D.N.Y.1976). Though petitioner cites several cases where a client's address was held to be privileged, the particular facts of

---

4. Though the recalcitrant witness in *Oceanic Transport Corp.*, 129 F.Supp. at 160, was a nonparty, it appears that the court did not consider this in its analysis. The result, however, is con-

sistent with the conclusions of this Court insofar as the rights of the nonparty witness were protected from the arbitrator's subpoena.

this case do not make it "one of the rare instances that [a client's address] will be protected." *Id.*

In *Field,* the client's location was held to be privileged when the client had given his address to his attorney for the specific purpose of obtaining legal advice about his location. *"In the course* of receiving advice ... concerning retention of counsel in his new place of residence ... [client] revealed his [new address].... The information was apparently related to the legal advice sought." *Field,* 408 F.Supp. at 1173 (emphasis in original). Similarly, in *In Re Stolar,* 397 F.Supp. 520 (S.D.N.Y.1975), the court held that the information sought (the client's address) was privileged because it was the very information that the client had legally sought to conceal. The court also noted that the information was readily available and that there was no need to subpoena the attorney to seek information otherwise easily obtained. *Id.* at 524–25.

In both of these cases, the party claiming privilege, unlike the petitioner here, made a strong showing that the information was communicated to the attorney "in confidence for the very purpose of obtaining legal advice with regard to the client's location." *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.,* 130 F.R.D. 25 (S.D.N.Y.1990) (citing *Field* and *Stolar* and holding that attorney's "conclusory statement" that address is privileged does not suffice to protect client's location). Petitioner here has made no showing that his client's address was anything more than incidental to the attorney-client relationship, and the address, therefore, is not privileged. *See Stolar,* 397 F.Supp. at 524.

Though the other cases cited by petitioner held that the client's address was privileged, the court in each instance based its ruling on particular circumstances which are not present here. In *Nackson, supra,* the court reviewed "the aggregate of circumstances" and held that where the client is a fugitive, where there are other means of obtaining the information, and where the prosecutor is making improper use of a grand jury, the attorney cannot be compelled to answer regarding the client's location. *Nackson,* 221 N.J.Super. at 207, 534 A.2d at 77. In *In re Advisory*

*Opinion No. 544,* 103 N.J. 399, 511 A.2d 609 (1986), the court *"particularized* [its inquiry] in terms of whether certain *information that identifies* disabled and indigent persons receiving legal services from a legal services project may be disclosed" without violating attorney-client privilege. *Id.* at 407, 511 A.2d at 613 (emphasis added). The court concluded that client-identifying information—including the client's address—in this particular situation, is "information relating to representation" and is, therefore, privileged. *Id.* at 411, 511 A.2d at 615. There is no question in the instant case as to the client's *identity;* it is his address that is sought.

The Court therefore concludes that Leonard Stern's address is not protected by the attorney-client privilege. If this information is requested, either at the arbitration hearing, or through *document* discovery, it must be provided.

SO ORDERED.