775 A.2d 111 (2001)
HORON HOLDING CORP., Plaintiff-Respondent,
v.
Barbara McKENZIE, Kenneth McKenzie, Defendants-Respondents, and
Jolie Conversion Corp., and Jolie Conversion Limited Partnership, Defendants,
Edward McKenzie, Intervenor-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 2001.
Decided June 6, 2001.
*113 Jonathan D. Clemente, Morristown, for intervenor-appellant (Clemente, Mueller & Tobia, attorneys; Mr. Clemente and Patrick D. Tobia, of counsel; Caroline L. Feeney and Eileen D. Pontaoe, on the brief).
Mark S. Winter for respondent Horon Holding Corp. (Shain, Schaffer & Raffanello, attorneys; Gary L. Maher, on the brief).
No other respondents filed briefs.
Before Judges WALLACE, JR., CARCHMAN and PARRILLO.
*112 The opinion of the court was delivered by CARCHMAN, J.A.D.
In this post-judgment collection matter, movant Edward P. McKenzie, a member of the bars of New Jersey, New York and South Carolina (movant), but neither a party nor attorney in the underlying action, appeals from an order denying his motion to quash a post-judgment discovery subpoena (subpoena). Plaintiff Horon Holding Corporation,[1] the judgment creditor, sought to compel movant to answer questions concerning the whereabouts of his brother and sister-in-law, the judgment-debtors, defendants Kenneth and Barbara McKenzie (defendants; Kenneth; Barbara) in order to facilitate the enforcement of plaintiff's multi-million dollar judgments against them.
Movant contends that the motion judge erred in denying his motion to quash and in ordering him to answer such questions because he has previously represented defendants in other matters in both New York and New Jersey, any information they may have conveyed to him concerning their addresses is protected by the attorney-client privilege, and: (1) plaintiff failed to demonstrate the propriety of and need for movant's deposition under the standard set forth in Kerr v. Able Sanitary and Environmental Services, Inc., 295 N.J.Super. 147, 158-59, 684 A.2d 961 (App.Div.1996); and (2) the order compels movant to violate the privilege and the attorney ethics rules and laws of New Jersey, New York, and South Carolina.
We disagree and conclude that the attorney-client privilege does not apply under these circumstances because defendants' flight from enforcement of the judgments and movant's cooperation in withholding their whereabouts to that end constitutes a fraud upon the court under Fellerman v. Bradley, 99 N.J. 493, 493 A.2d 1239 (1985), that movant's disclosure of that information does not breach his client confidentiality obligations under the Rules of Professional Conduct, and that New York and South Carolina law need not be considered.
*114 These are the integrated facts and procedural background of this appeal. Movant has represented defendants in various unspecified real estate transactions in both New York and New Jersey. On August 19, 1998, judgment on a promissory note was entered against Kenneth in favor of plaintiff in the amount of $4,376,734.87. On July 28, 1999, judgment on a related fraudulent conveyances claim was entered against both defendants in favor of plaintiff in the amount of $1,543,524.72. Although a restraining order was also entered to preclude their further transfers or conveyances of any assets, defendants, along with their assets, effectively vanished after the trial. Defendants' location has not been established, and a warrant has been issued for Barbara's arrest.
On March 3, 2000, plaintiff's attorney served a subpoena on movant pursuant to R. 4:59-1(e), commanding his appearance on March 22 with "[a]ll documents in [movant's] possession or in the possession of [his] firm which contain any information regarding any temporary or permanent residence, business or mailing address of Kenneth or Barbara McKenzie at any time subsequent to December 1, 1997." Movant moved to quash the subpoena alleging, in essence, that plaintiff was needlessly harassing him in light of the parties' postjudgment settlement negotiations and movant's prior attorney-client relationship with defendants.
Movant's certification stated, in relevant part:
I consider any and all information I have about Kenneth and/or Barbara McKenzie to be protected by the attorney/client privilege. Any information that I may have received at any time from either Kenneth or Barbara McKenzie has been expressed to me by them in their capacity as clients in conjunction with seeking and receiving legal advice from me as their attorney, with the express expectation that all such information remain confidential.
... As an attorney I am subject to the ethical rules and laws of New York, New Jersey and South Carolina. Additionally, I am subject to the American Bar Association Rules. In each instance ethical rules and laws prohibit me from disclosing client confidences.
According to plaintiff, the Florida address Kenneth provided in response to an information subpoena served at the May 1999 fraudulent conveyances trial belonged to a resort hotel where Kenneth no longer resided. Both before and after the trial, plaintiff employed a variety of measures to determine defendants' true address and the scope of their assets in order to enforce the judgments. These efforts included commissioning four separate asset and location searches by three private investigations firms, serving subpoenas on various financial institutions, performing title searches, consulting with postal employees, submitting numerous postal forwarding information requests, mailing numerous letters by regular and certified mail, analyzing the return notations, searching the internet for names, prior addresses, and telephone numbers, and deposing defendants' accountant. Despite their scope, those efforts were met with limited success. Although "some leads and potential addresses" had developed, along with information concerning an offshore trust maintained for Barbara's benefit, plaintiff was still uncertain of defendants' true address and had not yet discovered assets sufficient to satisfy the judgments. Plaintiff also noted that the litigation had not settled, and that plaintiff "ha[d] not agreed to forbear collection pending settlement negotiations."
*115 On May 12, 2000, Judge Moser denied movant's motion to quash and ordered movant's compliance, stating:
All right. I think it is clear from the record in this case that the plaintiff has been diligent in trying to collect this judgment, and has made considerable efforts in attempting to collect the judgment. And I think one of the things that is obviously needed, from the plaintiff's point of view, is the location of the defendant Kenneth McKenzie. There's a clear need for that information, and clearly, clearly Kenneth McKenzie has been avoiding divulging his location really throughout this matter. It was clear through the trial of the case that the assets were offshore. It was clear from the jury's verdict that he fraudulently transferred the properties that were here, and I am satisfied that [plaintiff] has sought this information, and at the present time it is not available from any other source.
Certainly, there is an attorney/client privilege which would attach to certain information that ... Edward McKenzie has, in the event that he has retained that information through representation. It's not clear in exactly what matters, how many matters, when Edward McKenzie has represented the defendant. But, clearly, the privilege does not extend to everything that Edward knows about Kenneth or other members of the family, so I am going to deny the motion to quash the subpoena.
With reference to some questions that the Court would rule should be answered, I would direct that he is required to answer as to the location of Kenneth McKenzie, and also to information as to the names and addresses of family members who might know in the event that he doesn't. Other than that, I'm not going to make any further ruling. Other questions that could be answered may or may not be subject to attorney/client privilege, depending on what the question is. But I think those questions should be answered.
An order denying movant's motion and compelling him to appear and "answer questions concerning the whereabouts of Kenneth McKenzie and other family members," including Barbara, was entered accordingly. The order also provided that other questions could be asked of movant and that he could assert the attorney-client privilege in response, if applicable.
Movant appealed from the order, which has been stayed pending this appeal.
Since the attorney-client privilege dominates our consideration on this appeal, we explore some basic principles of the privilege and challenges to its application.
The attorney-client privilege is "one of `the oldest of the privileges for confidential communications.'" In re Advisory Opinion No. 544, 103 N.J. 399, 405, 511 A.2d 609 (1986) (quoting 8 J. Wigmore, Evidence § 2290, at 542 (McNaughton rev.1961); Fellerman, supra, 99 N.J. at 498, 493 A.2d 1239 (same). It is intended to encourage a client's free and full disclosure of information to the client's attorney to facilitate the attorney's best advice in return. In re Advisory Opinion No. 544, supra, 103 N.J. at 405, 511 A.2d 609; In re Selser, 15 N.J. 393, 405, 105 A.2d 395 (1954); Hannan v. St. Joseph's Hosp. and Med. Ctr., 318 N.J.Super. 22, 27, 722 A.2d 971 (App.Div.1999); United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 561, 483 A.2d 821 (App.Div.1984). However, because it also causes the exclusion of evidence, the privilege "runs counter to the fundamental theory of our judicial system that the fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice." Selser, supra, 15 N.J. at 405, 105 A.2d 395. See also Wolosoff, *116 supra, 196 N.J.Super. at 561-62, 483 A.2d 821. Application of the privilege is therefore to be strictly construed to achieve its underlying purpose, in light of the reason for its assertion and the attorney's ethical obligations under the unique circumstances of each case. In re Nackson, 221 N.J.Super. 187, 197, 534 A.2d 65 (App.Div.1987), aff'd, 114 N.J. 527, 555 A.2d 1101 (1989); Fellerman, supra, 99 N.J. at 497, 502, 493 A.2d 1239.
The person asserting the privilege thus bears the burden to prove it applies to any given communication. State v. Pavin, 202 N.J.Super. 255, 260-61, 494 A.2d 834 (App.Div.1985) (noting that "[t]he burden of proof is on the person asserting the privilege to show that the consultation was a professional one"); L.J. v. J.B., 150 N.J.Super. 373, 377, 375 A.2d 1202 (App.Div.), certif. denied sub nom. Jacobson v. Balle, 75 N.J. 24, 379 A.2d 255 (1977) (noting that "the sine qua non of the privilege is that the client has consulted the lawyer in the latter's capacity as an attorney"); State v. Blacknall, 335 N.J.Super. 52, 56, 760 A.2d 1151 (Law Div.2000). A communication is privileged only if it is expressed by an individual acting in his capacity as a client while seeking or receiving legal advice or services from an attorney while acting in his or her capacity as such. Fellerman, supra, 99 N.J. at 499, 493 A.2d 1239; Wolosoff, supra, 196 N.J.Super. at 562, 483 A.2d 821 (noting that "the privilege accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client").
This venerated privilege is not absolute, and must cede, for example, where legal services are sought or rendered in aid of committing a crime or fraud, N.J.S.A. 2A:84A-20(2)(a); N.J.R.E. 504(2)(a); Fellerman, supra, 99 N.J. at 503-04, 493 A.2d 1239, where it has been waived by its holder, N.J.S.A. 2A:84A-29; N.J.R.E. 530; Kinsella v. Kinsella, 150 N.J. 276, 300-03, 696 A.2d 556 (1997); Wolosoff, supra, 196 N.J.Super. at 567 n. 3, 483 A.2d 821, or where the public interest demands that it give way because there is a legitimate need for the information sought, it is relevant to the issue before the court, and it cannot be obtained from any less intrusive source, In re Kozlov, 79 N.J. 232, 243-44, 398 A.2d 882 (1979); Wolosoff, supra, 196 N.J.Super. at 563-64, 483 A.2d 821.
In Fellerman, supra, the Supreme Court examined whether the attorney-client privilege applied to disclosure of a fleeing defendant's address which was sought in order to enforce his financial obligations under a divorce judgment. 99 N.J. at 496, 493 A.2d 1239. The Court held under an appropriately "expansive reading" of the fraud exception to the privilege, N.J.S.A. 2A:84A-20(2)(a); Evid. R. 26(2)(a) (now N.J.R.E. 504(2)(a)), that regardless of whether the defendant's address had been conveyed in confidence, which, as here, was impossible to determine from the record, the privilege would not obtain in any event because such "a direct and clear impairment of the administration of justice" by the shielding of that information to escape the enforcement of a money judgment "mocked justice" and constituted a "fraud [up]on the court." Id. at 496-99, 503-07, 493 A.2d 1239. The Court also observed that as misleading, inconsistent, or deceitful attorney-client communications or conduct directed toward the court were not privileged, the attorney's post-judgment disclosure of the client's whereabouts to prevent his "flouting" of the court's judgment and order of enforcement could not constitute a violation of the attorney's duties of confidentiality under the precursor to *117 RPC 1.6[2] because the communication could not be considered a confidence under those circumstances. Id. at 507-09, 493 A.2d 1239. The Court found "the inference of requisite duplicitous intent" to frustrate enforcement of the judgment by failing to disclose the defendant's whereabouts was "compelling," as it was clear that the defendant had requested his address be kept confidential and the conclusion that at least one of the motives for that request was to avoid compliance with the judgment was "virtually inescapable." Id. at 506, 493 A.2d 1239. Most significantly, the direct result of the defendant's express wishes and his attorney's steadfast adherence "would permit a party `to mock justice' by ignoring both a judgment and a separate enforcement order of the Superior Court, with none of the policies underlying the rationale for protecting a client's secrets advanced in the process." Id. at 509, 493 A.2d 1239. Finally, the Court observed that the client could, of course, "fulfill his wish to remain undiscovered simply by paying the [judgment]." Id. at 507 n. 2, 493 A.2d 1239.
Movant attempts to distinguish Fellerman by suggesting that in that case, defendant failed to comply with a court order for payment, as opposed to Kenneth's refusal to satisfy the judgments here. We note, however, that Kenneth apparently violated a restraining order precluding the transfer or conveyance of assets which nevertheless disappeared, along with defendants, after judgment. We also note that movant suggested at oral argument that the fraudulent conveyance action was a "garden variety" action. We do not view an action based on fraudulent conduct to be one of "garden variety," but rather a sober action implicating serious policy considerations within the scope of Fellerman.
This case is governed by Fellerman. Here, movant is not simply withholding an address which impairs collection of a judgment, but does so at the purported behest of a litigant who, as in Fellerman, has violated court orders directed to the same collection matter. We conclude that under Fellerman, the attorney-client privilege as to their address, if known by appellant, does not apply, and that information, along with the remaining ordered information, must be disclosed.
Movant relies on Kerr v. Able Sanitary and Environmental Services, Inc., supra, 295 N.J.Super. 147, 684 A.2d 961, for the proposition that the motion judge erred in *118 ordering his deposition because in seeking to depose an attorney, plaintiff assumed the burden to demonstrate the propriety of and need for movant's deposition. He asserts that plaintiff failed to meet that burden by failing to demonstrate that information concerning the whereabouts of Kenneth and other family members was both relevant to plaintiff's collection efforts and unlikely to be available by less oppressive means. Despite his fleeting acknowledgments that "the address of a judgment debtor may be relevant to collection efforts by a judgment creditor" and "that the facts of this case differ slightly from Kerr" because movant "is not an attorney involved in the current litigation," movant's status is a defining difference between this case and Kerr. In fact, careful examination of the facts and policies driving Kerr lead us to conclude that Kerr is inapposite.
To best relate the inapplicability of Kerr to this case, we describe the procedural niceties of post-judgment enforcement proceedings. In aid of enforcing a money judgment, "the judgment creditor or successor in interest appearing of record, may examine any person ... by proceeding as provided by these rules for the taking of depositions." R. 4:59-1(e). A party may depose "any person, including a party [or attorney]," R. 4:14-1, provided the discovery sought is "not privileged ... [and] is relevant to the subject matter involved in the pending action," R. 4:10-2(a). Kerr, supra, 295 N.J.Super. at 154-55, 684 A.2d 961.
A party or prospective deponent who objects to a deposition may move to quash the deposition subpoena or for an equivalent protective order under R. 4:10-3. Id. at 155, 684 A.2d 961. Upon such motion, and "for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." R. 4:10-3. If the motion is denied in whole or in part, "the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." Ibid.
A movant resisting the deposition ordinarily has the burden of proving "good cause" for a protective order-that is, the movant must establish "`that a protective order is necessary.'" Kerr, supra, 295 N.J.Super. at 155, 684 A.2d 961 (quoting D'Agostino v. Johnson & Johnson, 242 N.J.Super. 267, 281, 576 A.2d 893 (App.Div.1990).)
In Kerr, we examined our permissive deposition rules, designed to facilitate the adversarial process by promoting full and fair discovery of all relevant evidence, see, e.g., Wolosoff, supra, 196 N.J.Super. at 562, 483 A.2d 821, and carved out a narrow exception to that broad convention in the context of opposing attorney depositions, which "frequently interfere with the adversarial process by inviting delay, disruption, harassment, and perhaps even disqualification of the attorney from further representation of the client in the underlying litigation." Kerr, supra, 295 N.J.Super. at 154-55, 684 A.2d 961. In view of "the pernicious effects of ... compelling attorneys to submit to depositions while representing a client in the case," we held, as a matter of public policy, that a party's request to depose opposing counsel gives rise to presumptive "good cause" for a protective order under R. 4:10-3(a). Id. at 157-58, 684 A.2d 961. The burden then shifts to the deposition proponent to overcome the presumption by demonstrating that "the propriety and need for the deposition outweigh the possible disruptive or burdensome effects that the prospective deposition will have on the underlying litigation" because the information sought is both: (1) "relevant to the underlying action"; and (2) "unlikely to be available by *119 other less oppressive means." Id. at 158-59 &n. 6, 684 A.2d 961.
Movant concedes here, and indeed emphasizes elsewhere for purposes of asserting the New York attorney-client privilege, that he did not represent defendants in the underlying litigation and that "[t]he attorney-client relationship between [movant] and [defendants] does not involve ongoing litigation in which [movant] is acting as the attorney for [defendants]." That being the case, Kerr and its underlying public-policy objective of reducing hindrances to an ongoing adversarial process are simply inapposite, as movant's deposition will not have any "disruptive or burdensome effect" on any underlying litigation. Movant retained the burden of establishing that good cause existed for a protective order precluding his deposition. R. 4:10-3; Pressler, Current N.J. Court Rules, comment on R. 4:10-3 (2001); Kerr, supra, 295 N.J.Super. at 155, 684 A.2d 961; D'Agostino, supra, 242 N.J.Super. at 281, 576 A.2d 893.
In the context of this case, absent any other rationale advanced for his resistance, movant was therefore required to demonstrate that a protective order was necessary as to specific and discrete questions objected to on attorney-client privilege grounds, rather than by asserting a blanket objection to the deposition in its entirety. Cf. D'Agostino, supra, 242 N.J.Super. at 279-81, 576 A.2d 893 (noting that domestic corporate defendants were not unfairly prejudiced in "being made subject to the same discovery procedures as all other litigants in New Jersey," and stressing that Swiss-based subsidiary employees could not avoid New Jersey depositions through a blanket assertion that any testimony would subject them to jeopardy under Swiss secrecy law, but rather bore the burden to appear and object to specific questions on those grounds, where appropriate, and to let the court determine if the objections were valid). As movant failed to carry that burden, the motion judge did not err in ordering that movant be deposed.
Finally, we reject movant's arguments that an order requiring him to reveal Kenneth's address would cause him to violate his legal and ethical obligations not only under New Jersey law, but also under New York and South Carolina law, where he is also admitted. We need not address movant's expansive but clearly specious arguments regarding his ethical obligations in non-forum jurisdictions when his ethical obligation in the forum stateNew Jerseyis well-defined. We observe that he maintains his principal office in New Jersey and apparently represented Kenneth in transactions in this state.
While we respect movant's obligations under our sister state's ethical constraints, our concerns and policies have been clearly defined in Fellerman, and we will not compromise our determination of movant's obligations based upon his other bar admissions. We also reject without further comment, that movant's fleeting reference to his ethical obligations under South Carolina law might somehow trump his obligations under the ethical requirements of this state. Surely compliance with an attorney's ethical obligations cannot abide picking and choosing between jurisdictions where he has been admitted to avoid his underlying and paramount obligation in a forum where his obligation is clear.
We close by observing a particularly salient fact in Kenneth's pattern of deceit and avoidance. This is not simply a case involving an absconding judgment debtor, but a case involving an absconding judgment debtor who has proactively engaged in fraudulent transfers to avoid compliance with court orders and judgments. Movant *120 cannot utilize the attorney-client privilege to protect such conduct.
Affirmed.
NOTES
[1] The Chase Manhattan Bank (Chase) is plaintiff's successor in interest to these proceedings. For ease of reference, "plaintiff," as used here, denotes both Horon Holding Corp. and its successor, Chase.
[2] RPC 1.6 provides:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).
(b) A lawyer shall reveal such information to the proper authorities, as soon as, and to the extent the lawyer believes necessary, to prevent the client[:]
(1) from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to result in ... substantial injury to the financial interest or property of another;
(2) from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to perpetrate a fraud upon a tribunal.
(c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
(1) to rectify the consequences of a client's criminal, illegal or fraudulent act in the furtherance of which the lawyer's services had been used;
....
(3) to comply with other law.
(d) Reasonable belief for purposes of RPC 1.6 is the belief or conclusion of a reasonable lawyer that is based upon information that has some foundation in fact and constitutes prima facie evidence of the matters referred to in subsections (b) or (c).