**ODFJELL ASA, Odfjell USA, Inc., Odfjell Seachem As, Jo Tankers As, Jo Tankers, BV, and Jo Tankers, Inc., Plaintiffs,**

v.

**CELANESE AG, Celanese, Ltd. and Millennium Petrochemicals, Inc., Defendants.**

**In the Matter of the Arbitration Between Celanese Ltd., Celanese Chemicals Europe GMBH, and Millennium Petrochemicals, Inc., Claimants,**

and

**Odfjell Asa, Odfjell Seachem As, Odfjell U.S.A., Inc., Jo Tankers As, Jo Tankers BV, and Jo Tankers, Inc., Respondents.**

**No. 04 Civ. 1758(JSR).**

United States District Court, S.D. New York.

Dec. 18, 2004.

Gregory J. Wallance, Kaye Scholer LLP, New York, NY, for Petitioner.

Joseph J. Samarias, Steven F. Cherry, Wilmer, Cutler & Pickering, McLean, VA, Richard J. Rappaport, McGuireWoods LLP, Chicago, IL, Matthew Phineas Previn, Paul Adam Engelmayer, Wilmer, Cutler & Pickering, New York, NY, Richard L. Jarashow, McGuireWoods LLP, New York, NY, for Plaintiffs.

Hector Torres, Harold G. Levison, Kasowitz, Benson, Torres & Friedman, New York, NY, Gary William Dunn, Kasowitz, Benson, Torres & Friedman LLP, New York, NY, for Defendants.

Karen Asner, White & Case, New York, NY, for Stolt Nielsen.

## MEMORANDUM ORDER

RAKOFF, District Judge.

By Order dated December 7, 2004 (the "December 7 Order"), the Court (a) granted the motion of claimants Celanese Ltd., Celanese Chemicals Europe GmbH, Celanese Pte., Ltd., Grupo Celanese S.A., and Servicios Corporativos Celanese S. de RL de C.V. (collectively, "Celanese") and Millennium Petrochemicals, Inc. to enforce arbitration subpoenas requiring the custodians of records of non-parties Stolt–Nielsen S.A., Stolt–Nielsen Transportation Group, BV, Stolt–Nielsen Transportation Group,

Inc., and Stolt–Nielsen Transportation Group, Ltd. (collectively "Stolt–Nielsen") to appear before the arbitration panel, testify, and produce certain documents, and (b) denied the motion of Stolt–Nielsen to quash or stay a similar arbitration subpoena requiring Paul E. O'Brien, the former Senior Vice President and General Counsel of Stolt–Nielsen Transportation Group Ltd., to appear before the panel, testify, and produce certain documents. This Memorandum Order explains the reasons for the December 7 Order and addresses Stolt–Nielsen's subsequent motion for a stay of that Order.

Basic familiarity with the factual background of the underlying arbitration is here assumed. *See Odfjell ASA et al. v. Celanese et al.,* 2004 WL 1574728, 2004 U.S. Dist. LEXIS 13151 (S.D.N.Y. Jul. 14, 2004). Briefly, claimants are chemical producers who had entered into a variety of shipment contracts with respondents and with Stolt–Nielsen. The arbitration claims involve assertions that respondents Odfjell ASA, Odfjell USA, Inc., Odfjell Seachem AS, Jo Tankers AS, Jo Tankers, BV, and Jo Tankers, Inc. were co-conspirators in a scheme to fix prices, rig bids, and engage more generally in anti-competitive conduct in the parcel tanker shipping market, all in violation of federal antitrust laws.

The present dispute over the Stolt and O'Brien subpoenas plays out against the backdrop of an earlier dispute previously resolved by this Court involving other subpoenas. Specifically, by Order dated May 28, 2004 and subsequent Memorandum dated August 4, 2004 (the "August 4 Memorandum"), the Court denied the claimants' motion for an order compelling nonparty Hendrikus van Westenbrugge to comply with two arbitration subpoenas directing him to appear at a pre-hearing deposition. *See Odfjell ASA et al. v. Celanese AG et al.,* 328 F.Supp.2d 505

(S.D.N.Y.2004). In so ruling, the Court explained that Section 7 of the Federal Arbitration Act ("FAA") confers upon arbitrators only the power to compel nonparties to appear before the arbitrators, not the power to compel non-parties to participate in depositions or other forms of pre-hearing discovery outside the presence of the arbitrators. *Id.*

Seemingly taking its cue from this Court's May 28 Order (as elaborated by the August 4 Memorandum), the arbitration panel, on July 6, 2004, issued several subpoenas duces tecum directing Stolt–Nielsen "to appear in an arbitration proceeding" on July 28, 2004 and to produce at that time "all documents produced by Stolt–Nielsen to the United States Department of Justice ('DOJ') or to the European Commission ('EC') in connection with any investigation conducted by the DOJ or the EC concerning the parcel-tanker industry and all documents collected by the DOJ and EC from Stolt–Nielsen in the course of such investigation." Subpoenas Duces Tecum, Jul. 6, 2004, attached as Ex. 33 to Declaration of Gary W. Dunn, Aug. 19, 2004 ("Aug. Dunn Decl."). In a separate subpoena duces tecum dated July 22, 2004, the panel directed Paul O'Brien "to appear in an arbitration proceeding" on July 28, 2004 and to produce various documents at that time. Subpoena Duces Tecum, attached as Ex. 34 to Aug. Dunn Decl. By letter dated July 19, 2004, Stolt–Nielsen requested that the arbitration panel vacate the subpoenas directed to the Stolt–Nielsen entities on the grounds that the FAA does not allow arbitrators to issue subpoenas duces tecum to non-parties and that the subpoenas seek confidential information that could undermine the ongoing investigations by the DOJ and EC. *See* Letter from Karie Jo Barwind, Jul. 19, 2004, attached as Ex. 35 to Aug. Dunn Decl. By letter dated July 22, 2004, the arbitration panel denied this request, stating that "[i]t

is the Panel's position that the subpoena it issued is a valid hearing subpoena" and that the panel could take up the issue of confidentiality at the hearing itself. *See* Letter from John J. Gibbons, Jul. 22, 2004, attached as Ex. 36 to Aug. Dunn Decl. By letter dated July 23, 2004, Stolt–Nielsen again refused to appear, and the July 28th hearing was adjourned. *See* Letter from Karie Jo Barwind, Jul. 23, 2004, attached as Ex. 37 to Aug. Dunn Decl.

Although the foregoing subpoenas, unlike the "deposition" subpoenas this Court had earlier considered, facially recited that they were returnable before the arbitration panel, they did not seemingly require any hearing-like activity by the arbitrators and hence might have been argued to exceed the panel's jurisdiction under Section 7 of the FAA. On August 3, 2004, however, the panel amended the subpoenas. The new subpoenas to the various Stolt–Nielsen entities commanded their respective custodians of records "to appear *and testify* in an arbitration proceeding" on August 12, 2004, and "to bring with [them] and produce at that time and place any and all documents and things, of which [they] have custody or control, which are responsive" to the requests for documents turned over to the DOJ and the EC. Subpoenas, Aug. 3, 2004, attached as Ex. 32 to Aug. Dunn Decl. (emphasis added). By letter dated August 9, 2004, Stolt–Nielsen again refused to comply. *See* Letter from Karie Jo Barwind, Aug. 9, 2004, attached as Ex. 38 to Aug. Dunn Decl. Thereafter, claimants moved in this Court to compel compliance.

Similarly, on August 3, 2004, the panel also issued an amended subpoena to Paul O'Brien likewise commanding him to "appear *and testify* in an arbitration proceeding" on August 12, 2004 and to bring eight specified sets of documents at the same time. Subpoena, Aug. 3, 2004, attached as Exhibit A to Declaration of Karen M. Asner, Oct. 6, 2004 ("Oct. 6 Asner Decl.") (emphasis added). Unlike Stolt–Nielsen, O'Brien did not contest the subpoena. Stolt–Nielsen, however, did so, eventually moving in this Court to quash the subpoena.[1] As a result, the return date on the amended subpoenas, both to Stolt–Nielsen and to O'Brien, were adjourned pending resolution of the motions before this Court.

■ Thereafter, the Court received extensive briefing and oral argument both on claimants' motion to compel compliance with the Stolt–Nielsen subpoenas and Stolt–Nielsen's motion to quash the O'Brien subpoena. With respect to the former, Stolt–Nielsen's primary argument is that the subpoenas are just a thinly-disguised attempt to obtain the pre-hearing discovery that the August 4 Memorandum forbade. However, as noted, the instant subpoenas to Stolt–Nielsen, unlike the deposition subpoenas addressed in the August 4 Memorandum, call for the non-party to appear before the arbitrators themselves to testify and to produce certain documents. This difference is dispositive.

■ Section 7 of the FAA states that the arbitrators "may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed

---

1. In this regard, it should be noted that, even though O'Brien previously worked for Stolt–Nielsen, O'Brien and Stolt–Nielsen are currently litigation adversaries in a proceeding in Connecticut state court styled *O'Brien v. Stolt–Nielsen Transportation Group, LTD et al.*, X08 CV 02 0190051 (the "Connecticut case"), and it is Stolt–Nielsen's contention that the attorney-client privilege issues that are the subject of the Connecticut case are grounds for quashing (or at least staying) the O'Brien subpoena.

material as evidence in the case." 9 U.S.C. § 7. This is precisely what the instant subpoenas require. Nothing in the language of the FAA limits the point in time in the arbitration process when this power can be invoked or says that the arbitrators may only invoke this power under section 7 at the time of the trial-like final hearing.

■ Indeed, the above-quoted language of the FAA plainly contemplates that not every appearance before an arbitrator will consist of a full-blown trial-like hearing, for it provides that the arbitrators may summon the witness to come "before them *or any of them.*" In practical terms, this means that, while the necessity of appearing before at least one arbitrator will prevent parties to an arbitration from engaging in the extensive and costly discovery that is the bane of civil litigation, at the same time preliminary proceedings can proceed expeditiously before a single arbitrator to deal with preliminary questions of admissibility, privilege, and the like before the full panel hears the more central issues.[2]

■ As noted, Stolt–Nielsen objects to the instant subpoenas not only on Section 7 grounds but also on the ground that the subpoenas seek documents purportedly protected by grand jury secrecy and by confidentiality arrangements with government agencies. The Court is, frankly, skeptical that any of these arguments is likely to prevail. However, there is no reason for the Court to decide these issues, at least in the first instance, since one of the very reasons for making these subpoenas returnable before one or more members of the arbitration panel is so that the arbitrators can rule on preliminary issues of admissibility, privilege, and the like. Indeed, section 7 would make no sense if it provided the arbitrators with the power to subpoena witnesses and documents but did not provide them the power to determine related privilege issues. *See In the Matter of the Arbitration Between Laufman v. Anpol Contracting, Inc.,* 1995 WL 360015, 1995 U.S. Dist. LEXIS 8214 (S.D.N.Y. June 13, 1995), *citing Local Lodge 1746, International Association of Machinists and Aerospace Workers, AFL–CIO v. Pratt & Whitney,* 329 F.Supp. 283, 287 (D.Conn.1971) (compelling compliance with an arbitration subpoena over objection that subpoena called for privilege documents on ground that arbitrator is competent to evaluate privilege claims); *SchlumbergerSema, Inc. v. Xcel Energy,* 2004 WL 67647 (D.Minn. Jan.9, 2004) (granting in part petitioner's motion to enforce arbitration subpoena over objection that documents and information sought were confidential, noting that opposing party's "concerns about the confidentiality of the information sought can be addressed by the panel"). This approach of having the arbitration panel, rather than the Court, determine the relevant privilege

---

**2.** Stolt–Nielsen also argues that, if the Court approves these subpoenas, there would be no limitation on the number of times its custodians would potentially be compelled to appear before the panel to produce documents. *Cf. In re Integrity Ins. Co.,* 885 F.Supp. 69, 73 (S.D.N.Y.1995) (noting, while holding that an arbitrator may not compel appearance of a non-party at a pre-hearing deposition, that to hold otherwise would result in a situation where "[t]he non-party may be required to appear twice-once for deposition and again at the hearing"). However, claimants have flatly represented to the Court that they do not intend to recall the custodians of records of Stolt–Nielsen at any other time than the hearing at which the subpoenas are returnable, and the Court has accepted and relied on this representation. *See* Transcript, Sept. 14, 2004, at 15. Any failure to comply with this representation may therefore give rise to the imposition of sanctions, and this Court retains jurisdiction for that limited purpose.

issues, at least initially, is also consistent with "the 'great deference' which must be paid to arbitral panels by federal courts." *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir.2004) (*quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2003))

■ If claimants had brought a motion to compel compliance with the O'Brien subpoena, then the Court would have been compelled to grant that motion for the same reasons, set out above, as requires the Court to grant claimants' motion to compel compliance with the Stolt–Nielsen subpoenas. But, as noted, Mr. O'Brien has not himself refused to comply with the subpoena directed to him. Rather, the objection comes, in the form of a purported motion to quash, from his former employer, Stolt–Nielsen. While Stolt–Nielsen undoubtedly has standing to object in a proper forum to O'Brien's giving of testimony or providing of documents as to which Stolt–Nielsen claims privilege, there is considerable doubt in this Court's mind that this is the proper forum, at least at this juncture, since the FAA nowhere explicitly gives a person subpoenaed to an arbitration the right to move in a federal district court to quash the subpoena.[3] However, the Court need not reach this issue, since, in any event, for the reasons already stated in connection with the Stolt–Nielsen subpoenas, objections on the grounds of privilege and the like should first be heard and determined by the arbi-

trator before whom the subpoena is returnable, and hence, even assuming *arguendo* that this Court has jurisdiction to consider the motion to quash, the motion must be dismissed at this stage as unripe.[4]

Accordingly, for the foregoing reasons, the Court reconfirms its Order of December 7, 2004, granting claimants' motion to enforce the Stolt–Nielsen subpoenas and denying Stolt–Nielsen's motion to quash or stay the O'Brien subpoena. As for Stolt–Nielsen's motion for a stay, the Court, after careful review of the parties' submissions, concludes that Stolt–Nielsen has failed to demonstrate a substantial possibility of success on appeal, and hence that motion is also denied.

SO ORDERED.

---

3. There is some authority for the idea that the right to bring a motion to quash goes hand in hand with the court's power to enforce or refuse to enforce an arbitration subpoena. *See, Integrity Insurance Co. v. American Centennial Insurance Co.*, 885 F.Supp. 69, 72 (S.D.N.Y.1995). However, neither this case nor the cases it cites analyze the issue in terms of the plain language of the FAA.

4. Before the Court had reached this conclusion, it was provided, on an *in camera* basis,

with an affidavit from a third party responding to Stolt–Nielsen's contention that claimant Celenese had purloined some of the documents it was requesting from O'Brien. Since this contention is raised in the context of Stolt–Nielsen's motion to quash the O'Brien subpoena, it too should first be addressed by the arbitrators, to whom, if they so request, this Court will be happy to furnish a copy of the affidavit on an *in camera* basis.